CASE 14—PETITION EQUITY—SEPTEMBER 21.

# Bibb, &c. v. Miller, &c.

APPEAL FROM OHIO CIRCUIT COURT.

1. IN PARI DELICTO.—It is the benefit of the public, and not the advantage of the defendant to an action, that is to be considered in cases in which one or more of several parties in pari delicto rely for defense upon the illegality of the transaction out of which the claim arises.

     In such cases the presumption is in favor of the transaction, and if it be susceptible of two meanings, the one legal and the other not, that interpretation will be put upon it which will support and give it operation. (2 Chitty on Contracts, page 977; 6 Q. B. 989; 4 M. & W. 654.)

2. THE ACT INCORPORATING THE "PUBLIC LIBRARY OF KENTUCKY"

authorized the holding of musical and dramatic entertainments, at which a portion of the proceeds of sales of tickets of admission should be distributed by lot.

*In a suit involving the ownership of a ticket and the right to a prize it had drawn,* to which the corporation was not a party, it is assumed that the corporation acted within the scope of the authority granted, and that the ticket was of sufficient intrinsic value to make it the subject of a suit.

WALKER & HUBBARD, ⎫
SWEENEY & STUART, ⎭ . . . . . . . For Appellants,

CITED

*Upon the question of agency:*

6 Johns. 39, Green v. Miller.

3 Baxter, 459, Slough v. Law.

5 Wheat. 326, Mechanic's Bank v. Bank of Columbia.

1 Hill, 567, Snyder v. Sponable.

11 Johns. 169, Jackson v. Veeder.

10 Vern. 523, Low v. Perkins.

13 B. Mon. 402, Lynn v. Burgoyne.

*Confusion of property:*

7 Mass. 127, Bond v. Ward.

8 Pick. 443, Shumway v. Rutter.

19 Ohio, 337, Inglebright v. Hammond.

20 Vern. 333, Pratt v. Bryant.

21 Pick. 298, Ryder v. Hathaway.

*Legislative powers and lotteries:*

Constitution of Kentucky, art. 2, sec. 38.

Session Acts 1873, Shelby College Act.

Civil Code, section 330.      11 Mass. 376.

Session Acts 1871, vol. 2, p. 502, sec. 7.

3 Seld. 228, Gov'rs of Alms Houses v. Am. Art Union.

2 Met. 598, Gregory's ex'r v. Trustees of Shelby College.

23 Wend. 418, The People v. Sturtevant.

13 Barb. 577, The People v. Am. Art Union.

12 Abbott, 210, Negley v. Devlin.

44 Miss. 820, Miss. Soc'y of Arts v. Musgrove.

12 Ala. 170, Broadlett v. Tuscaloosa Art, etc.

10 Wheat. 395, Brent, &c. v. Davis.

13 Penn. 328, McKnight v. Biersecker.

McHENRY & HILL, . . . . . . . . . For Appellees,

(Brief not in record.)

JUDGE LINDSAY DELIVERED THE OPINION OF THE COURT.

J. H. Miller and others instituted their action in equity against G. M. Bibb and others to recover the possession of a certain paper or coupon representing an interest of one tenth in ticket No. 21,101 in the fourth grand gift concert of the Public Library of Kentucky.

They alleged that they were the joint owners of, and entitled to, the possession of said coupon, and that it entitled them to demand and receive from the Public Library the sum of seven thousand five hundred dollars, which amount was awarded to the holders thereof in the distribution of prizes on the 31st day of March, 1874.

They alleged further, that the defendants held said coupon without right, and they sought and obtained an order enjoining them from collecting and the Library from paying to them any part of the sum due and payable on the coupon in question.

Pending the litigation the Library paid the amount due to a receiver appointed by the court. Upon hearing, the complainants were adjudged to be the owners of the coupon, and, therefore, of the money in the hands of the court, and from that judgment this appeal is prosecuted.

Preliminary to the questions of fact we are called upon to determine whether or not the right which appellees assert arises out of a transaction forbidden by the penal statutes of this commonwealth.

It is insisted that the library company had no legal authority to sell such tickets and to distribute such prizes as the ticket and prize claimed by appellees.

The 7th section of the act incorporating the Public Library (page 499, vol. 2, Session Acts, 1871) authorizes it to obtain books, issue stock, accept sureties and loans, and " also to give, not to exceed five in number, public literary, musical, or dramatic entertainments, at which they may distribute by lot to

patrons of the entertainment a portion of the proceeds arising from the sale of tickets of admission."

It is claimed that the sale of the tickets and the distribution of prizes culminating at the concert of March 31st, 1874, were unauthorized by this grant of power; and it is argued that the library company, instead of selling tickets of admission to a musical concert and distributing portions of the proceeds arising therefrom to the patrons, as a matter of fact set up and caused to be drawn a regular lottery. We are therefore asked to declare that the drawing was unauthorized and illegal, and to adjudge that the chancellor should have refused to lend his aid to the protection or enforcement of any right depending upon or growing out of it.

It is to be observed that this is not a controversy between the appellees and the library, and that the chancellor did not find it necessary to enforce the agreement entered into by the library and the ticket-holder. The corporation recognized its obligation to pay, and voluntarily paid into court the amount claimed to be due on the coupon. The contest is between parties claiming under the same title, and who, if the source of title be tainted with illegality, are necessarily *in pari delicto*. The question as to the legality of the sale of tickets and the distribution of prizes arises collaterally and derives its importance solely from the fact that the plaintiffs in the action are compelled to rely on such sale and distribution in order to make out their title to the fund in controversy.

It is the benefit of the public and not the advantage of the defendant to an action that is to be considered in cases in which one or more of several parties *in pari delicto* rely for defense upon the illegality of the transaction out of which the claim arises, and in such cases the presumption is in favor of the transaction; and if it be susceptible of two meanings, the one legal and the other not, that interpretation will be put upon it which will support and give it operation. (Chitty on

Contracts, page 733; Mittelholzer v. Fullarton, 6 Q. B. 989; Lewis v. Davidson, 4 M. & W. 654.)

It is reasonable that this rule shall be applied to a proceeding in which the person or corporation alleged to have violated the penal laws of the state is not a party to the issue and has had no opportunity to be heard. To refuse in such a case to act upon this rule would be to disregard the presumption of innocence existing in favor of all those whose guilt has not been established by proof.

The facts connected with the sale of tickets and the distribution of prizes are not set out in the record, and without these facts it is impossible for this court to determine judicially as to the character of these transactions. The library company had the right to sell tickets of admission to the concert and to distribute prizes among the ticket-holders; and for the purposes of this litigation, in the absence of proof to the contrary, we must assume that it acted within the scope of the powers granted by its act of incorporation.

This conclusion meets another objection raised by appellants. They contend that at the time the ticket came into their possession it had no intrinsic value. But, if it must be assumed that it was issued and sold by the library company pursuant to legal authority, then, as it entitled the holders, or some one of them, to be admitted to the concert and also to a chance for one of the prizes to be then distributed, it must be treated and held as possessing in law sufficient value to make it the subject of litigation.

We are of opinion that the chancellor did not err in holding that the parties constituting what is denominated the "Beaver Dam Club" are the owners of the coupon, and entitled to the money paid into court by the library company.

The proof shows with reasonable certainty that Bibb, who is one of the appellants, and who was at the time one of the agents for the "club," bought the coupon for the "club" with the

money of the "club," and that for some considerable time he held it as the property of the "club." We are satisfied that in the transfer of the possession of the coupon to Coleman, Mitchell, and Bibb, no wrong was contemplated by either of the parties. There is nothing in the record tending to excite even a sus-picion of fraudulent intent, but as Bibb held the ticket as agent, with no power even in conjunction with his co-agent Stevens to sell or exchange it, and as Coleman and Mitchell had notice of the character in which Bibb and Stevens were acting, the good faith of the parties can not change the rules of law. The exchange of coupon No. 21,101 for coupon No. 2,054 did not divest the members of the "club" of title, and they remained the owners of the ticket up to and at the time the prize was awarded to its holders.

There are questions of practice raised in the argument, but we perceive no error in the proceedings prejudicial to the substantial rights of appellants.

The judgment of the court below is affirmed.