Martin v. Richardson.

CASE 27—PETITION ORDINARY—MARCH 18.

## Martin v. Richardson.

APPEAL FROM UNION CIRCUIT COURT.

| 94 | 183 |
|----|-----|
| 100 | 618 |
| 94 | 183 |
| e107 | 30 |
| 94 | 183 |
| e112 | 617 |
| 94 | 183 |
| e114 | 307 |
| e115 | 260 |
| 94 | 183 |
| 135 | 736 |
| 94 | 183 |
| d132 | 709 |

1. VALIDITY OF TRANSACTION GROWING OUT OF ILLEGAL ACT.—If an act in violation of law be already committed, a subsequent agreement founded thereon is valid, provided it constituted no part of the original inducement or consideration of the illegal act.

2. SAME.—OBTAINING LOTTERY TICKET BY FRAUD.—Where one by fraudulent representations obtains possession of a lottery ticket which has drawn a prize, and receives the money thereon, he is to be regarded as collecting the money for the use of the rightful owner of the ticket, who may maintain an action therefor, although he originally purchased the ticket from the defendant in violation of law, and parted with it to defendant in exchange for another lottery ticket, the exchange being induced by defendant's fraud.

3. PRESUMPTIONS.—In all such cases every presumption is in favor of the legality of the transaction, and even if the fact that the lottery ticket was purchased in Kentucky, and therefore in violation of law, would prevent a recovery, it must be presumed, in the absence of proof to the contrary, that the ticket was not purchased or exchanged in Kentucky, but in some place where it was lawful to purchase or exchange it.

4. SAME.—PLEADING.—As the defendant denied by his answer that the plaintiff had ever owned or held the ticket which the plaintiff alleged in his petition defendant had obtained from him by fraud, certain transactions set up by defendant in his answer as to the sale by him to plaintiff of lottery tickets and their subsequent exchange, which transactions he alleges occurred in Kentucky, necessarily excluded the transaction with reference to the particular ticket in question

Martin v. Richardson.

here, and therefore it does not appear from the pleadings, which are · alone presented for review, that this ticket was purchased or exchanged in Kentucky, it not being so alleged in the petition.

ADAIR & MORTON FOR APPELLANT.

1. The appellee acquire·l no legal title to the tickets in the Little Louisiana Lottery, nor to any prize drawn by them, under the purchase from appellant. (Gen. Stats, chap. 29, art. 23, sec. 3; *Idem*, chap. 22, sec. 5; 13 Am. & Eng. Enc. of Law, p. 1167; *Idem*, p. 1187.)

2. The exchange of tickets was an exchange of articles without any value. Neither ticket was worth any thing, except it was made valuable by the voluntary act of the lottery company. Therefore, appellee lost nothing by the exchange, and the law will not recognize and adjudicate transactions involving no valuable consideration. There can be no assumption (as in the case of Bibb, &c., v. Miller. &c, 11 Bush, 310), that the lottery was legal. it being admitted by the pleadings· that the lottery in Kentucky (where the contract was made) was illegal.

3. The exchange of tickets, although occurring after the drawing, was as much in violation of our statute as if made before the drawing occurred, and appellee would have as much right to sue for the ticket itself as for its proceeds.

Whenever the contract which the party seeks to enforce is expressly or by implication forbidden by the common or statute law, no court will lend its assistance to give it effect. And persons co-operating in an illegal transaction can not obtain relief from the courts. (Buck v. Albee, 26 Vt., p. 184; Chitty on Contracts, p. 730; Duncanson v. McLuer, 4 Dallas, 306.)

WM. LINDSAY AND EDWARD W. HINES FOR APPELLEE.

1. There is nothing in the pleadings to show that the ticket which drew the prize was purchased or subsequently exchanged in Kentucky, and, therefore, the court can not know that the transaction was in violation of law. In fact, the presumption is in favor of the transaction, and if it be susceptible of two meanings, the one legal and the other not, that interpretation will be put upon it which will support and give it operation. (Bibb, &c., v. Miller, &c., 11 Bush, 309.)

2. As the legality of the Little Louisiana Lottery was in issue, and the evidence is not here, this court must presume that its legality was proved, or rather that it was not proved to be illegal, the presumption being in favor of its legality.

3. The original illegal transaction was complete prior to the time defendant perpetrated upon plaintiff the fraud by which he obtained the possession of the ticket, and defendant is in no better attitude than a stranger to that transaction would be. Therefore, he must be re-

Martin v. Richardson.

garded as having received to the use of plaintiff the money he col-
lected upon the ticket he had procured from plaintiff by fraud, and
the mere fact that the money received was a prize in a lottery, drawn
by a ticket purchased in violation of law, does not prevent plaintiff
from recovering. (Story on Contracts, 4th ed., vol. 1, sec. 622; Far-
mer v. Russell, *et al.*, 1 B. & P , 295; Armstrong v. Toler. 11 Wheat.,
258; Willson v. Owen, 30 Mich., 474; Rothrock v. Perkinson, 61
Ind., 39.)

4. If the connection of defendant with the original sale is to be consid-
ered, there is still no obstacle to a recovery. There is a difference
between enforcing illegal contracts, and asserting title to money
which has arisen from them. (Brooks v. Martin, 2 Wall., 70; Catts
v. Phalen, 2 How., 376.)

5. The parties were not in *pari delicto* even in the original transaction,
for he who offers a lottery ticket for sale, and thus tempts others to
buy, is guilty of a greater wrong than he who buys, and under such
circumstances relief may be granted. (Harper v. Harper, 85 Ky.,
165; Anderson v. Meredith, 82 Ky , 571.)

ALLEN & HUGHES of counsel on same side.

JUDGE HAZELRIGG delivered the opinion of the court.

Richardson, the appellee, was the owner and holder,
by purchase from Martin, the appellant, of four tick-
ets in the Little Louisiana Lottery concern. Among
them was ticket No. 93,262.

The drawing was fixed for January 14, 1890, and on
the 15th or 16th of that month Martin informed Rich-
ardson that it had been postponed. He then induced
him to surrender his four tickets and accept one in
the Big Louisiana Lottery, saying that he had let
him have these four tickets by mistake, that they be-
longed to another person, who was demanding them.
As a matter of fact the drawing had not been post-
poned, and the ticket numbered as above stated had
drawn a prize of three thousand seven hundred and
fifty dollars. These facts were known to the appel-
lant and not to the appellee. Thereafter the appel-

lant presented the ticket to the lottery concern and
received the prize. Refusing to account to the appel-
lee for it, he was sued, and in the lower court, after
the verdict of a jury, judgment for the sum of three
thousand seven hundred and fifty dollars was ren-
dered against him, and from which he appeals.
He does not bring up the evidence, and hence the
only question is as to the sufficiency of the pleadings
to support the verdict and judgment. The action was
simply one for money had and received. The defend-
ant collected that which belonged to the plaintiff,
and the law implied a contract to pay it over to him.
The contract which the law raised between them was
not founded on the purchase or sale of a lottery
ticket, but on the obligation to refund the money
which had been procured and received by falsehood
and fraud. It is true the plaintiff alleges that he
bought the ticket from the defendant, and that it was
one in the Little Louisiana Lottery, but he does not
state where he bought it, and there is nothing in the
petition to show that the lottery was unauthorized
by law to transact such business. Hence the demur-
rer was properly overruled.

The answer denied that the plaintiff had ever owned
or held the ticket numbered 93,262, or that the de-
fendant ever delivered said ticket to the plaintiff, or
that such ticket was obtained by defendant from the
plaintiff in any way, or that he made the represen-
tations complained of.

Then follows a statement in the answer of how the
plaintiff and defendant had exchanged a dollar ticket
in the Big Louisiana Lottery for four twenty-five cent

tickets in the Little Louisiana Lottery, and he dis-
claims any knowledge at the time of any of the tick-
ets having drawn prizes.   He avers that the Little Lou-
isiana Lottery is located and operated in California, and
is not licensed or authorized by the laws of California
or other States to carry on that business; nor is either
of said concerns authorized or licensed to carry on
such business, or sell or dispose of tickets or prizes
by any law or statute of this State; that both plaint-
iff and defendant resided in this State at the time of
the purchase by plaintiff of the tickets, and at the
time of their procurement and exchange *as aforesaid*,
and all *said* acts and transactions were had and done
in Union county, Kentucky.

It will be observed that it is nowhere alleged that
plaintiff bought ticket No. 93,262 in Kentucky, or that
he exchanged that particular ticket with the defend-
ant in Kentucky.   The transactions set up by the de-
fendant in his answer as having occurred in Union
county, Kentucky, necessarily excluded those with ref-
erence to this particular ticket, because the defendant
expressly and unreservedly denied that plaintiff ever
held this ticket, or that he ever obtained it from him
in any way.   Moreover, the plaintiff, by reply, denied
that the Little Louisiana Lottery was not licensed or
authorized by law to carry on such business; and
therefore, as every presumption must be indulged in
necessary to support the judgment, we must assume,
in the absence of anything to the contrary, that this
purchase or exchange of ticket No. 93,262 occurred in
some place where it was legal and lawful to purchase
it or exchange it, and that the Little Louisiana Lot-

tery was an institution legally licensed to carry on its
business. If the evidence were before us, a different
state of case might be shown, but the verdict was for
the plaintiff, and presumably sustained by the proof.
And moreover, as announced in all such cases, every
presumption is in favor of the legality of the transac-
tion. (Bibb, &c., v. Miller, &c., 11 Bush, 306.) Here,
then, we have a case where a party holds a ticket,
the value of which does not depend on any chance,
or its payment on the voluntary action of the com-
pany, and the legal obtention, title and ownership of
which is not called in question, or tainted with any
sort of illegality. It is fraudulently obtained from
the possession of its rightful owner, and we can see
no reason why recovery may not be had. Such, in-
deed, would seem to be the case if the purchase or
sale were shown to have occurred in Kentucky. This
is not an action on a contract of sale or purchase of
a lottery ticket. The transaction out of which the
suit springs, and which forms its sole basis, is subse-
quent to any alleged illegal act, and wholly discon-
nected with it.

In Armstrong v. Toler, 11 Wheat., 258, Chief Justice
Marshall approved the opinion of the lower court,.
which was to the effect "that a new contract, founded
on a new consideration, although in relation to prop-
erty respecting which there had been unlawful trans-
actions between the parties, is not itself unlawful."
And Toler was allowed to recover of Armstrong money
which he had paid for Armstrong on account of goods
known by both parties to have been imported contrary
to law.

In Catts v. Phalen, &c., 2 How., 376, Catts was em-
ployed to draw out the tickets. He had a confeder-
ate to buy a certain ticket, and before inserting his
hand in the lottery wheel he concealed in the cuff of
his coat certain false and fraudulent tickets, which
he managed to slip between his fingers, and then
drawing out his hand produced the false ticket.
When sued for the money received on the tickets so
procured, he relied on the admitted illegality of the
lottery drawing.

The Supreme Court said : " Phalen & Morris had in
their possession twelve thousand five hundred dol-
lars, either in their own right or as trustees for others
interested in the lottery. No matter which, the legal
right to this sum was in them. The defendant claimed
and received it, by false and fraudulent pretenses, as
morally criminal as by larceny, forgery or perjury;
and the only question before us is whether he can
retain it by any principle or rule of law."

" To state," says the court, " is to decide such a
case."

" The principle of illegal contracts is " (see Story on
Conflict of Laws, sections 248, 249), " after the illegal
act is done, if the new contract is wholly unconnected
with the illegal act, and is founded on a new consid-
eration, and is not a part of the original scheme, al-
though it may be known to the party with whom the
contract is made, it will make no difference that such
new and independent contracts are made with the
person who is the contractor or conductor of the orig-
inal illegal act, if it is wholly disconnected therefrom."

So in Story on Contracts, section 760, it is said ;

"If an act in violation of either statute or common law be already committed, and a subsequent agreement entered into, which, though founded thereupon, constituted no part of. the original inducement or consideration of the illegal act, such an agreement is valid."

Instead of an "agreement" between the parties, founded upon alleged illegal acts, we have in this case an implied obligation raised by law to refund moneys fraudulently received and withheld. For other authorities to the same effect, see Farmer v. Russell, 1 B. & P., 295; Willson v. Owens, 30 Mich., 474; Rothrock v. Perkinson, 61 Ind., 39.

The Little Louisiana Lottery concern was, under the pleadings in this case, an institution operated under lawful authority, and the defendant, in presenting the ticket in question, and in collecting the plaintiff's money, may be regarded as acting as his agent, and as collecting for his use. The law implies an obligation to refund the money, which is subsequent to and disconnected with the alleged illegal acts of buying, selling or exchanging the tickets.

Judgment affirmed.