CASE 37—ACTION BY W. B. SMITH AGAINST M. J. RICHMOND AND OTHERS TO RECOVER MONEY FROM HIS ASSOCIATE CONTRIBUTED TO PROCURE IMMUNITY FROM PROSECUTION FOR BRIBERY—DEC. 9.

# Smith v. Richmond and Others.

```
114  303
f132  709
```

APPEAL FROM KENTON CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS.    AFFIRMED.

ILLEGAL CONTACT—BRIBERY OF OFFICIALS—CORRUPTION FUND—PARTNERS IN CRIME—RECOVERY OF FUNDS BY CONTRIBUTOR. ·

Held:  Plaintiff, defendant, and another, who were engaged in maintaining an illegal lottery in Ohio, met; and on defendant's representation that it was necessary to contribute money with which to bribe the State and city officials, in order to procure immunity from prosecution, plaintiff paid to defendant monthly for several years various sums to be used for such purpose. Defendant converted the money to his own use. HELD, that defendant was not plaintiff's agent, but that plaintiff and defendant were partners in an illegal enterprise, and plaintiff could not recover the amount so paid.  ·

H. P. WHITTAKER AND M. M. DURRETT, FOR APPELLANT.
HARVEY MYERS, FOR APPELLEES.

(No briefs.)

OPINION OF THE COURT BY JUDGE GUFFY—AFFIRMING.

This is an appeal from a judgment of the Kenton circuit court in the suit of the appellant against the appellees. The court having sustained a demurrer to the petition as amended, and appellant failing to plead further, his action was dismissed.

The sole question presented for decision is whether the petition as amended stated a cause of action, or, in other words, whether, upon appellant's own showing, he was entitled to relief from a court of equity. So much of the petition as is material to plaintiff's cause of action reads as follows: "(2) Now comes W. B. Smith, the plaintiff, and, for his amended petition herein, states that on or before the —— day of May, 1890, the defendant, M. J. Richmond, represented to this plaintiff that he, the said Richmond, was the employe and agent of S. T. Dickinson & Co. and their associates, who then were operating and carrying on a lottery business in the city of Cincinnati, Ohio, under the charters of what were known and designated as the 'Kentucky State Lotteries;' that one Louis Davis, since deceased, was at said time and thereafter operating and carrying on a lottery business in said city by permission of the said S. T. Dickinson & Co. and their associates, and of this plaintiff; that this plaintiff was at said time and thereafter operating and carrying on a lottery business in said city as the sole owner of the Colorado State Lottery, for which he had obtained a charter from the State of Colorado; that at said time the said defendant M. J. Richmond approached this plaintiff and represented to him

that it would be necessary for plaintiff and the said lottery companies represented by said defendant to pay one George B. Cox, a citizen and resident of said city, certain sums of money, in order to procure immunity from arrest and prosecution by the State and municipal authorities of the State of Ohio and said city for operating and carrying on said lottery business aforesaid; that shortly after the said representations so made as aforesaid by Richmond to this plaintiff, to-wit, on or about the ―― day of May, 1890, a meeting was held in the city of Cincinnati, at which plaintiff, said Richmond, acting in his capacity of employe and agent as aforesaid, and Louis Davis were present, and it was then and there agreed that plaintiff should pay $150 per month, the companies represented by said Richmond should pay $150 per month, and said Davis should pay $50 per month, to said Cox, for the purpose aforesaid; and it was further agreed by and between the parties at said meeting that the several sums above mentioned should be delivered to said Richmond, to be paid by him to said Cox for the said purposes, and this the said Richmond agreed to do. Plaintiff further states that pursuant to said agreement he did deliver to said Richmond in each and every month from May, 1890, to April, 1892, both inclusive, the sum of $150, and that pursuant to said agreement, and on the representation to this plaintiff by said Richmond that it was necessary for plaintiff to pay to said Cox for the purpose aforesaid a further sum of $75 per month, plaintiff did deliver to said Richmond in each and every month from May, 1892, to April, 1895, both inclusive, the sum of $225; and that pursuant to said agreement this plaintiff did deliver to said Richmond in each and every month from May, 1895, to May, 1897, both inclusive, the sum of

$175; making a total sum of money so delivered to said Richmond, to be paid to said Cox for the purpose aforesaid, of $16,075. Plaintiff further states that said defendant M. J. Richmond failed to pay said sum of money, or any part thereof to said Cox, and fraudulently converted the same, and all of it, to his own use, and refuses to return said money, or any part thereof, to this plaintiff, although plaintiff has demanded same. Plaintiff reiterates herein each and every allegation of his original and first amended petition, and makes same part thereof."

We copy the opinion of the court below, as one of the means of making a clear statement of the contentions of the parties hereto: "The cause is submitted on demurrer to petition as amended. There are some depositions taken on behalf of plaintiff in the record, but they are not read or considered on this motion. There is no ascertainment of the facts, and the allegations of the petition as amended are taken as true only for the purpose of this demurrer. The facts so taken as true are as follows: In the year 1890, or prior thereto, the plaintiff, Smith, was engaged in the business of conducting a lottery in the city of Cincinnati, Ohio. S. T. Dickinson & Co. were at the same time engaged in the same business in the same city. M. J. Richmond, defendant hereto, was the employe and agent of said Dickinson & Co. One Louis Davis was also conducting the same business at same time and place. The plaintiff, Smith, and said Davis and said Richmond, representing said Dickinson & Co., held a meeting, at which it was agreed that the several parties engaged in said business should each month pay to said Richmond a certain sum of money, to be applied by said Richmond in bribing and corrupting the authorities of the State of Ohio and of the city of Cincinnati, to thereby procure immunity for those engaged in said business. The

said Smith, pursuant to said agreement, paid to said Richmond from May, 1890, to May, 1897, the sum of $16,075, but the said Richmond, instead of using said money in the bribery of Ohio officials (assuming, for the purposes of this demurrer, that such a thing were possible), retained the money and converted it to his own use. This action is instituted by Smith to recover of Richmond said sum of $16,075, and, on demurrer to the petition as amended. the question arises as to whether the law and the courts will furnish relief to one occupying the position held by the plaintiff, Smith. This action is in equity. It is contended by the defendant on this demurrer that where the consideration of a contract is an agreement to hinder, impede or defeat the administration of the criminal or penal laws, the contract is against public policy, is void, and that no party thereto can enforce it by process of law. The plaintiff, on this demurrer, admits the existence of this principle contended for by defendant, but says it applies only as between the parties to such a contract, and does not apply as between one of the parties and his agent, or the agent of all the parties, acting as go between in carrying out the vicious provisions of the contract. The plaintiff quotes and relies upon the opinion of the Kentucky court of appeals in case of Martin v. Richardson, 94 Ky., 183 (14 R., 847) 21 S. W., 1039, 19 L. R. A., 692, 42 Am. St. Rep., 353. Martin was the agent of a lottery company. He sold to Richardson some tickets in his lottery, one of which drew a prize; and, while Richardson was ignorant of this fact, Martin induced him to exchange the tickets he held for other tickets, and Martin collected the prize from the lottery company. Richardson sued Martin for the money, and the court of appeals held that he could recover; that, even assuming the purchase and sale of the lottery tickets to have been an illegal transaction.

Smith v. Richmond and Others.

Richardson could not avail himself of that fact as a defense. It seems to me that it would have been strange had the court of appeals held otherwise. The purchase and sale of the lottery tickets constituted a transaction that was, at most, illegal. The act of Martin in procuring an exchange of the tickets was a crime. The court of appeals simply refused to permit the commission of an act, at most illegal, by one, 'to be pleaded as a defense to the commission of a crime by another.' It refused to permit the commission of a lesser wrong by one to be used as a defense to the commission of a greater crime by another. This opinion in that case is not applicable to the case at bar. The plaintiff quotes and relies upon Wharton on Agency, and the opinions of several State courts, from which it may be assumed to be the rule that an agent who has in his hands money belonging to his principal, on a closed account, can not set up as a defense, in an action by the principal for money had and received, the illegality of whole or a part of the transaction. In all the extracts from these authorities quoted in brief for plaintiff, the word 'illegal' is used in speaking of the contract. Plaintiff's counsel has not provided this court with the facts of any of the cases he has referred to. The only reference made in any of the extracts set out in plaintiff's brief is to 'illegal' contracts. It appears certain that if Smith had furnished this money to Richmond as his agent for the purpose of conducting a lottery, and that Richmond retained and converted the money, Smith could recover of him, even in a State where the conducting of a lottery was unlawful. But in the case at bar the plaintiff was for seven years continuously engaged not only in conducting an unlawful business, but in attempting, and, as he believes, successfully attempting, to bribe and corrupt the authorities of Ohio and Cincinnati, and to that end he delivered to

Richmond over $16,000. For the seven years this plaintiff was engaged in the commission of an act that this court may fairly assume to be a crime in the State of Ohio, the place of its commission. Counsel for plaintiff has not furnished this court a single instance in which any court has given relief to one in such a position, as against a defaulting agent. I believe there is a broad distinction between contracts illegal and contracts criminal, even when considered in reference only to the relations and respective rights of one of the parties thereto and his agent. This plaintiff is asking the law and the courts of Kentucky to aid him in recovering back money that he paid out for seven years, believing it was being used in the bribery of the authorities of a sister State. This does not seem to be the purpose for which the courts of this State are created or are existing. It is but rarely that such an unblushing confession is seen as in the plaintiff's pleadings in this case. It may be observed that Richmond, in putting this money in his pocket, and keeping it there, although in so doing he defaulted, was guilty of an offense much less than that he would have been guilty of had he carried out the purposes of his principal. In this connection the fact is emphasized that as to Richmond there is no evidence that these things are true, and that they are assumed to be true solely for the purpose of this demurrer. It appears by his own pleading that the hands of Smith are so unclean that he is not entitled to ask any relief in any court, and the demurrer to the petition as amended is sustained. The plaintiff declines to plead further. The petition herein is dismissed, and it is adjudged that the defendant recover of the plaintiff his costs herein, to which plaintiff excepts, and prays an appeal to the court of appeals which is granted."

It is evident from the pleadings of the ap   llant that he,

the appellee Richmond, and Davis were engaged in operat-
ing lotteries in the city of Cincinnati, which was a violation
of the criminal laws of the State; that in order to procure
immunity from arrest and punishment, or, in other words,
to corrupt the officers and to defeat justice, they made the
agreement set out in the petition, and Richmond was to re-.
ceive and pay over the money to procure the desired im-
munity from arrest and prosecution; and that the business
was so conducted for about seven years, during which time
the sum aggregating $16,075 was paid over to Richmond:
It may be inferred from the petition that the desired pro-
tection was secured, as it is nowhere claimed that the object
of the agreement was defeated. Appellant refers to a num-
ber of decisions of this and other courts in his two able
breifs, which he claims sustains his contention in this case.
Upon examination of the various cases, it will be found that
they cover what may be called three classes of cases: One is
where a party simply employs a man as agent to go and pay
money to a third party for an illegal purpose. Another class
is where parties may be engaged in an illegal business, and
have realized considerable pecuniary profit, in the shape of
money or other property, which is in possession of the other
party to the crime, in which case some courts hold that
such party has in his hands money or property which just-
ly belongs to the other parties, and, although it is the
fruit of illegal business, yet he will not be allowed to
have the same simply because the business which procured
the property is illegal. The other class is where employes
who are simply the servants employed to carry on and con-
duct an illegal business will not be permitted to withhold
from the owner property which was placed in their hands
by him for the purpose of conducting or carrying on such
illegal business. The case at bar does not fall within the

Smith v. Richmond and Others.

rule announced in any of the cases referred to. In this case these parties clearly entered into a conspiracy or partnership for the purpose of enabling them to violate the laws of the State of Ohio, and to corrupt or bribe the officers of the law. These parties were in reality partners in the venture or undertaking specified, and in the general course of business, be it legal or illegal, one of the partners only would handle the money or pay out at a time. In other words, all the parties would not be expected to go together and pay out or receive money together, but the act of one is the act of all. We conclude, therefore, that the transaction set up in the petition must be treated as the formation of a partnership for an illegal purpose, greatly to be condemned from any standpoint. A corruption of the authorities of a great State of city should not be tolerated. The payment of money to defeat the enforcement of the criminal laws is one of the most hienous ·of crimes, and no court should afford any relief to the parties engaged in such a nefarious business. The operation of lotteries is by common consent regarded as contrary to public policy, and highly immoral, and this plaintiff had added to that unholy business a still greater crime of bribing public officers, and paying money to prevent the enforcement of the criminal laws of a sister State. Both parties, according to the petition, are guilty of a great crime, and the court should not hear the complaints of either in respect to the illegal business conducted by them. To allow such would, in effect, be to wink at, if not to sanction, the most corrupt of practices. We think the opinion of the court below is in accord with nearly all, if not quite all, the authorities respecting such transactions, and in accord with the principles announced in the recent case of Safe Deposit Co. v. Respass (23 R., 1905) 66 S. W., 421, 56 L. R. A., 479. To al-

low the appellant to recover in this case would, in effect, be saying to all parties that "you can go on with reasonable safety, furnish money to a person for illegal and criminal purposes, and, after you have derived the benefit therefrom, sue the so-called agent and recover back the money, unless he, perchance, was able to prove to the satisfaction of the court that he in like manner had paid over the money for the said unlawful purposes." As before stated, we do not think that Richmond was the agent of plaintiff, in the legal sense of agency, but was simply one of the partners in crime; and we know of no court that has ever sustained a suit of one partner for an accounting for money invested in an unlawful purpose, especially if such purpose was to violate the criminal laws of a State, and shield offenders from punishment, or corrupt public officers.

Judgment affirmed.