CASE 87.—ACTION BY FRANK CORBIN AGAINST JENNIE M.
   SMITH.—December 3, 1909.

# Smith v. Corbin

Appeal from Fayette Circuit Court.

WATTS PARKER, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

1.  Evidence—Parol Evidence—Rights of Parties.—The rights of
    parties to a contract are to be determined by the contract as
    written, where neither fraud nor mistake in its preparation
    or terms is alleged.
2.  Vendor and Purchaser—Contracts—Construction.—The pur-
    chaser of a lot agreed to pay a certain price therefor, and
    deposited certificates of membership in an investment com-
    pany as collateral security; the vendor also retained a lien
    for the purchase price.  The purchaser was to keep up the
    payments on the certificates, and had the right to pay the
    purchase money with  maturing coupons on the certificates.
    The certificates were to be returned to the purchaser when
    the purchase price had been paid.  The investment company
    failed, and the vendor sued to enforce his lien.  Held, that as
    the contract provided that the purchaser should pay the dues
    to the investment company, and that only the maturities
    should be accepted as payments on the purchase price, the
    purchaser's assignee was not entitled to a credit upon the
    purchase price for dues paid on the certificates.
3.  Vendor and Purchaser—Contracts—Fraud.—Fact that the ven-
    dor knew of the financial unsoundness of the investment com-
    pany as well as its hazardous and illegal methods of busi-
    ness, and represented to the purchaser that the coupons
    would mature at regular intervals during each year until the
    purchase money would be paid, and thereby induced the pur-
    chaser to continue payment to the investment company until
    it went into the hands of a receiver, but for which repre-
    sentations she would not have done so, were not fraudulent

representations which would vitiate the contract of sale, it not being alleged that the vendor was an officer or agent or even a stockholder in the company, or that such knowledge came to him through any connection he had with its affairs, nor that the representations were made when or before the purchaser or her assignee became investors in the investment company, nor as an inducement to them to invest therein nor that the vendor knew of the assignment by the purchaser of her interest and rights under the contract until it was made nor that the assignee was induced by the representations to accept the assignment; it further appearing that the purchaser acquired the certificates four months before the contract of purchase was made.

4. Vendor and Purchaser—Contract—Fraud—Representations.— The vendor's representation that the coupons would mature regularly if the purchaser continued the payment of dues on the certificates was, at most, a mere expression of opinion.

5. Vendor and Purchaser—Contract—Validity.—The certificates being held by the vendor merely as collateral, there being an unqualified undertaking by the purchaser to pay the consideration for the lot, the fact that the investment company's business was an unlawful lottery would not affect the validity of the contract of sale of the lot.

6. Appeal and Error—Presumptions—Validity of Contract.—The answer not alleging facts from which it could be said that the investment company's business was conducted as a lottery, it would be presumed on appeal, after a verdict for plaintiff, that the contract for purchase of the lot was not made illegal by the manner in which the investment company conducted its business.

7. Contracts—Validity—Enforcement of Valid Parts of Contract Partly Illegal.—Where there are contained in the same instrument distinct engagements by which a party binds himself to do certain acts, some of which are legal and some illegal, the performance of those which are legal may be enforced, though the performance of those which are illegal may not.

J. ALEXANDER CHILES for appellant.

FORMAN & FORMAN and DON FORMAN for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This is an appeal from a judgment of the Fayette circuit court enforcing a vendor's lien asserted by

appellee against certain collateral and a lot on Chestnut street in the city of Lexington owned by appellant, and directing a sale of the property in satisfaction of the lien debt and costs of the action.

It appears from the record that appellant's sister, Maggie Smith, in June, 1897, obtained by purchase certain certificates of membership or stock, with coupons attached, in the Southern Mutual Investment Company, of Lexington, and that, desiring to utilize this stock in the purchase of a house and lot from appellee, she in October, 1897, entered with him into a written executory contract whereby he sold and agreed to convey her by proper deed, upon the full payment by her to him of $1,300 with interest from date, a house and lot situated on Chestnut street, Lexington, known on the plat of the city as lot 219. In the contract a lien was retained on the lot to secure the payment of the purchase money. The contract recited that the second party, Maggie Smith, had taken out in the Southern Mutual Investment Company six certificates of membership with coupons attached; and the contract provided: "The said certificates shall be and they are hereby assigned to the first party (appellee) to be held by him as collateral to secure the payment of said purchase price, and the said first party alone is authorized to collect and receipt for all the maturing coupons on the said certificates or renewals thereof, until the said purchase price with interest is fully paid to him."

The contract also provided: "That the said second party (Maggie Smith) will each and every month, beginning on the 15th day of October 1897, pay to the Southern Mutual Investment Company according to its rules, the dues of the said certificates or renewals —that is to say, $2.00 per month on each of said certi-

ficates or renewals thereof;   *   *   *   but when all
of said purchase price and interest is paid, as agreed
upon, said first party (appellee) shall turn over and
deliver said certificates to said second party, and they
shall be free from all claims of the first party.''   The
contract contained the further provision that: ''If at
any time the second party should be three months in
default on any of the said payments to the Southern
Mutual Investment Company, then all of the unpaid
purchase money above agreed upon with interest
thereon up to that date shall be due and payable, and
the said first party shall have the right to carry the
said certificates in the said Southern Mutual Invest-
ment Company and to own the same absolutely as his
property, and the second party shall have no interest
therein nor claim thereon whatever.''

Yet another provision of the contract required
Maggie Smith to keep the house on the lot she pur-
chased insured for. appellee's benefit as long as any
of the purchase money remained unpaid.   It will be
observed that the purchaser had the right to pay the
purchase money upon the lot with maturing coupons,
and that she was to continue the certificates of mem-
bership in the investment company, and to meet all
dues that might accrue thereon until the purchase
money was fully paid.   Pursuant to the contract, she
took possession of the lot, procured insurance on the
house, paid the dues, and continued the certificates
for several years and until she sold, and in writing
assigned and conveyed them, together with her inter-
est in the lot and all her rights under the contract to
her sister, the appellant Jennie M. Smith, who took
the place of Maggie, and in the writing between them
assumed all the undertakings and liability of Maggie
imposed by the contract of the latter with appellee.

Jennie M. Smith, after thus taking the place of Maggie in the contract with appellee, continued as Maggie had done the insurance upon the property, the certificates of membership in the Southern Mutual Investment Company, and also to pay the dues thereon, until the company became insolvent and its property and business went into the hands of a receiver under an order of the Fayette circuit court. When this event occurred, appellant quit paying dues upon the certificates of membership of which she was the owner, and as none of the coupons maturing after the appointment of the receiver were paid by the company to appellee, and no part of what remained of the purchase money due on the lot was thereafter paid him by appellant, he, as allowed by the contract, brought suit against appellant for the balance of purchase money, and to enforce his lien upon the lot and certificates of stock he held as collateral to satisfy the amount due.

It appears that appellee down to the time of the appointment of the receiver had been paid by appellant and her sister Maggie, through the investment company, from maturing coupons, divers sums amounting in the aggregate to $316.80. In the meantime the house situated on the lot appellee sold had been destroyed by fire and the insurance thereon, amounting to $665.00, was also received by appellee, and for that as well as the $316.80 appellant was entitled to credit upon the amount sued for. By the judgment rendered in the lower court appellee recovered $1,300, with 6 per cent. interest from October, 1897, and costs of the action, credited by the various sums making up the $316.80 as of the dates they were paid, respectively, and by the insurance of $665 as of the date it was received by appellee. Appellant,

however, complains of the judgment and the action of the circuit court in rejecting the defenses interposed to a recovery by her answer, and it is now our duty to determine whether there is any merit in her complaint.

The answer as finally amended set up, in substance, the following matters of defense: (1) That, in addition to the credits and insurance admitted by appellee, appellant and her sister paid to the investment company in dues upon the certificates of stock deposited with appellee as collateral $954.21, for which it was alleged she was also entitled to credit. (2) That she was ignorant of the antecedents and character of the Southern Mutual Investment Company and of its system and methods of business, but that appellee was informed thereof and of the financial unsoundness of the company, as well as its hazardous and illegal methods of conducting its business; yet that with such knowledge he, by fraudulently representing to her that the coupons would mature at regular intervals during each year until the purchase money due him upon the lot would be paid, induced her to continue the payment to the company of dues until its assets and business went into the hands of the receiver; but for which representations she would not have done so. (3) That the manner in which the Southern Mutual Investment Company conducted its business made it in effect a lottery, the operation of which was contrary to law, and that, as the executory contract under which she purchased the lot of appellee obligated her to pay him therefor through the investment company and its methods were illegal, the contract became tainted with such illegality and entitled her to its rescission and an accounting by which appellee should be charged with, and appellant allow-

ed to recover, all the moneys he had received from her and her assignor upon the lot.   The circuit court by sustaining a motion to strike out certain parts of the answer and sustaining a demurrer to what remained, held that the matters set out above did not constitute a defense, and in that conclusion, after mature reflection, we concur.

As to the claim for additional credits from the payment of dues, it is sufficient to say that the rights of the parties are to be determined by the contract as written, and, as neither fraud nor mistake in its preparation or terms is alleged, we must accept its meaning as expressed.   It specifically provides that appellee only had the right to, and should be paid, the maturities.   Moreover, he agreed to accept as payment upon the purchase price only the maturities, and these appellant and her assignor agreed he should receive, to be applied, first, in liquidation of the interest on the purchase money, and, secondly, as credits upon the principal.   By the terms of the contract, appellant and her assignor had to pay the dues to the investment company, but, as to what application should be made of them after they were paid, that instrument is silent.   But appellant would have been compelled to pay the dues so long as she continued the certificates of membership in the investment company even if not indebted to appellee, or after completing the payment of what they owed him.   It is not claimed that appellee failed to credit appellant or her assignor by any payment received from the investment company, or that he was negligent in failing to collect or demand of the company the money upon any matured coupon to which he was entitled.   We conclude, therefore, that no credit should have been allowed in the judgment for the dues.

We are also convinced that the plea of fraud is not good. While it was charged that appellee knew of the financial unsoundness of the investment company and of its hazardous and alleged illegal business methods, it is not alleged that he was an officer or agent or even a stockholder in the company, or that such knowledge came to him through any connection he had with its business or affairs. Besides, it was not averred that the alleged fraudulent representations were made when or before appellant or her assignor became investors in the investment company, or as an inducement to them to invest therein. On the contrary, as before stated, it appears that appellant's assignor acquired the certificates of membership of the company in June, 1897, and that her purchase of the lot of appellee was on the following October, four months later. She did not, therefore, invest with the company at the instance of appellee, and he probably did not know of the investment until he sold her the lot.

It does not appear from the averment of the answer that appellee knew of the assignment to appellant of her sister's interest and rights under her contract with him until after it was made, nor was it alleged that she was induced by the alleged fraudulent representations of appellee to accept the assignment or assume in her sister's stead the obligations it imposed. But, after all, an analysis of the answer and several amendments will show that the alleged fraudulent representations of which appellant complains were simply that appellee assured her the coupons would mature regularly, if she continued the payment of dues thereon. This, at most, was but an expression of opinion on his part; and judging the investment company at the time, in the light of her past ex-

perience with it, she had the same means of knowing as did appellee, with what regularity the coupons carried by her in the company would mature.

The facts averred in the answer as amended do not show particular knowledge of the condition of the affairs of the investment company on the part of appellee, or that he had any peculiar means of knowing it; nor did he sustain any such relation of trust or confidence to appellant or her assignor, or to the investment company, as would make what he said support an action for fraud or deceit, although what he said with reference to the maturity of the coupons may have been exaggerated or untrue. So we think it should be considered that in entering into the contract made by them the parties were upon an equal footing, and that they had equal opportunity of investigating and knowing the subject-matter of the contract in all its details.

We are further of opinion that appellant cannot avoid the contract or ask its rescission on account of the manner in which the Southern Mutual Investment Company conducted its business. However illegal its business methods, it is not alleged in the answer or amendments that appellee had any connection therewith either as an officer, agent, or privy of the investment company. Nor is it alleged that he in any manner furnished or advanced money, property, or other thing of value to the appellant or her assignor with which to aid the lottery, if it were a lottery, or that he was in any way to participate in the winnings or profits, if any, which might accrue to the appellant or her assignor from their investment in the company. The contract shows that appellee was only to receive from appellant and her assignor the $1,300, with interest from October 10, 1897, the agreed price of

the lot; and, in the event more maturities arose than was necessary for the payment of this fixed sum, with interest, the excess was, under the contract, to be absolutely the property of appellant. The certificates were held by him simply as collateral, and whenever there was paid to him the consideration for the lot, with interest, the certificates were to be returned by him to the appellant. It is patent from the contract that there was an unqualified promise and undertaking on the part of appellant and her assignor to pay the consideration for the lot, whether such payment should be accomplished through the maturity of coupons or otherwise. Its payment by means of the maturities was simply a method adopted for the convenience of appellant and her assignor, presumably, by their choice.

The facts alleged in the answer as amended do not afford such information as to the business methods of the Southern Mutual Investment Company as will enable us to say that its business was conducted after the manner of a lottery, and, in the absence of such information, we must presume that the contract between appellant and appellee was in no way made illegal by the manner in which the investment company conducted its business. Martin v. Richardson, 94 Ky. 183, 21 S. W. 1039, 14 Ky. Law Rep. 847, 19 L. R. A. 692, 42 Am. St. Rep. 353; Bibb, etc., v. Miller, etc., 11 Bush, 306. But if it were true that the investment company's manner of doing business constituted it a lottery, the fact that appellee was to be paid by means of its maturing coupons cannot invalidate the contract with reference to the sale of the lot; it being the duty of appellant to pay the balance of purchase money due thereon in some other way, if the insolvency of the investment company prevent-

ed her from doing so by means of the maturing coupons. So, in any event, the contract between appellant and appellee should be upheld in so far as it was not contrary to law. In other words, it is a well-known rule of law that where there are contained in the same instrument distinct engagements or covenants by which a party binds himself to do certain acts, some of which are legal and some illegal, the performance of those which are legal may be enforced, although the performance of those which are illegal may not. Brown's Adm'r v. Lankford's Adm'r, 3 Bibb, 497; Beach on Contracts, Sec. 1426; Parsons on Contracts (6th Ed.) p. 517.

It should be borne in mind that the contract in question was not one between appellant, or her assignor, and the investment company; nor is the investment company a party to this action, or in any way seeking to benefit from the contract. The action is simply one on the part of appellee to recover the balance of purchase money due on the lot and to enforce the lien retained therefor. The failure of the investment company, through insolvency, did not relieve appellant of the obligation imposed by the contract to pay the balance of purchase money. It merely destroyed the means by which she had expected to pay it, left it in part unpaid, and compelled her to resort to some other means of raising the money. So in no way can it be said that the failure of the investment company to continue the payment of maturing coupons prevented appellee from compelling by suit payment of the balance of purchase money due him upon the lot. It is clear, therefore, that appellant's plea that the investment company was a lottery did not constitute a valid defense to the action.

The record disclosing no error in the judgment, the same is affirmed.