## Leake et al v. Isaacs.
(Decided Feb. 14, 1936.)

MARK BEAUCHAMP for appellants.

R. RUTHENBURG for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

On September 7, 1934, the appellee, C. D. Isaacs, instituted a claim and delivery proceedings in the common pleas branch of the Jefferson circuit court alleging that he was the owner and entitled to recover immediate possession of a certain Chevrolet coach, which was wrongfully held in the possession of the appellant Mrs. Polie Leake.

Further the petition alleged that the car had been offered as a prize by the Big Four Transportation Brotherhood, to be awarded at its picnic held at Fontaine Ferry Park in Louisville, Ky., on September 1, 1934, when, it is alleged, Isaacs proved to be the owner and holder of the winning ticket, No. 10023, on said car, but that at the time of said drawing had at the picnic, plaintiff was not personally present but was represented by the appellants, Mr. and Mrs. Leake, who at the time there held and presented the winning ticket for him under an agreement had with them to so represent him.

The evidence as to this is that plaintiff Isaacs was a railroad conductor, who had bought a book containing some twelve of these chances or lottery tickets on the car, which were numbered 10013 to 10024, inclusive, and that ticket No. 10023 of this book proved to be the winning ticket.

Isaacs states that he, finding that he would be unable to attend the picnic and drawing because of having to go out ''on a run,'' saw the appellant Leake and asked him if he was going to this picnic and stay

for the ticket drawing, who told him he was and that his wife was going out with him; that she, that morning in discussing this matter with him, had asked to hold some of their tickets as she was lucky; that he (Isaacs) thereupon told him that he had a book of tickets and asked Leake if he would take them to the picnic for him and represent him at the car drawing; that he might, if he wished, let his wife hold them, as she claimed to be lucky; and that if she won the car with any of his tickets for him, he would give her $25.

Also Isaacs, at the time of turning over his tickets to Leake, marked each with his initials and also wrote down his telephone number, so that Leake might notify him of the outcome should he win the car.

A few days thereafter, having learned that his ticket No. 10023 had won the car, upon meeting Leake he asked him about it, saying, "I see my number drew the car," to which Leake had answered, "No, my wife bought that ticket down there that drew the car and nobody is going to beat her out of it."

The next day Isaacs again saw Leake and his wife about turning over to him the car he claims they had drawn for him, under the agreement claimed made with them, when he discovered they were not going to give it up to him but were attempting to fraudulently keep the car, and, as further evidencing such intention, Mrs. Leake stated that she had sold the car as soon as she drew it to her brother-in-law, W. E. Harned.

Isaacs then notified them that he would at once proceed to take legal steps to recover it, whereupon he filed this action against them and the said Harned, who was represented by Mrs. Leake as having purchased the car.

To the petition, the defendants answered, denying its allegations and by separate paragraph pleading that it was recited as a condition of the drawing contract and printed upon all of these tickets sold by the Railway Brotherhood, that the holder of the ticket should be personally present at the drawing, and present his winning ticket when called, otherwise, if not so personally claimed, a further drawing would

be made, and pleaded that Isaacs was not present at the drawing nor was he the holder or owner of the winning ticket on the car. By another paragraph of the answer it was alleged that the manner and scheme in which the automobile was won was an illegal lottery scheme prohibited both by the Constitution and statute laws of the state of Kentucky, and following set out the mode and manner in which the drawing was held, showing same, and further alleging that plaintiff acquired no rights in the car by reason of his being the holder of the alleged winning ticket, when it was both sold and bought and the car won in violation of the law.

A demurrer was filed to this paragraph of the answer, when, without waiving it, Isaacs filed a reply, admitting that he was not present at the picnic drawing and that Mrs. Leake had in her possession the winning ticket at the time of the drawing, but alleged that the condition printed on the ticket that the holder of the ticket was to be present at the time of the drawing constituted a contract only between the purchaser of the ticket and the Big Four Brotherhood, which condition the contracting parties had a right to waive and did waive.

The court overruled the demurrer to the fourth paragraph of the answer, but of its own motion struck from said paragraph so much thereof as pertained to the lottery defense, to which the defendants excepted.

An additional reply filed admitted that Mrs. Polie Leake was present and the holder of the winning ticket, but claimed that she was there acting as the agent of the appellee, Isaacs, and also that the condition printed upon the ticket was waived by the Brotherhood and which was a condition only between the plaintiff, the purchaser of the ticket, and the Brotherhood.

Further, the plaintiff, in support of his claim of ownership of the car by reason of being the owner and holder of the winning ticket upon the car, introduced as witnesses two of the acting officers of the Brotherhood who conducted the selling of these tickets, the first of whom stated that he sold this book of tickets in evidence to Isaacs, which contained twelve tickets, numbered respectively 10012 to 10024, while

the second stated that he had turned over, for selling, to the said witness salesman this particular book containing the twelve tickets, numbered as stated, and the next to the last one of which, or ticket No. 10023, had proved to be the winning ticket on the car.

On the other hand, it was stoutly testified by appellants and their witnesses that no such agreement as claimed was had between them and the plaintiff, or that they had agreed or had undertaken to represent him at the picnic drawing for the car. On the contrary appellants stated that Isaacs had given them the tickets to have and to hold as their own, upon his finding that he could not attend the picnic and present them in person as required, and in this claim they were corroborated by the testimony of their kinswoman, a Mrs. Smith, who reported that she heard the conversation that was had between Leake and Isaacs to such effect.

Upon final submission of the cause, the court instructed the jury that if they believed from the evidence that the plaintiff Isaacs, prior to the drawing held for the automobile, was the owner and holder of ticket No. 10023 in the drawing of the Brotherhood, and further believed from the evidence that before said drawing the plaintiff delivered a number of tickets, including No. 10023, to the defendant Polie Leake under an agreement had between the plaintiff Isaacs and the defendant Leake that the said Leake was to accept such tickets and to attend said drawing as plaintiff's representative at said drawing, and in the event that any of said tickets so delivered him contained the winning number that he (Leake) would represent the said Isaacs and claim the said automobile for him; and should they further believe that ticket No. 10023 was the number of the ticket calling for said automobile, and that the said Leake accepted said tickets under the above agreement, that they should find for the plaintiff, even though at the time of the drawing the winning ticket was in the possession of Mrs. Polie Leake; that unless they so believed they would find for the defendant, etc.

Under the evidence as above summarized, and such instruction given it by the court, the jury returned a verdict for the plaintiff.

Leake, dissatisfied with these rulings, appeals, contending (1) that the court erred to his prejudice by its order directing the striking from the answer of the allegations therein made as to the drawing constituting a lottery, and (2) that it erred in overruling appellant's motion for a peremptory instruction as to Polie Leake, upon the ground that nowhere in the pleading or proof does Polie Leake claim to have any interest in the automobile in question.

The one material question thus presented is whether or not, conceding that the plan by which the car was to be raffled off and awarded by the Brotherhood to the holder of the ticket drawn from the drum and that the prize plan here followed by the Brotherhood in giving away the car was in its nature a lottery device had in violation of the provisions of both the Constitution and statutes, such defenses as also the further one pleaded that the ticket provided that its holder must, in order to win the car, be present at the drawing, were available to the defendants if, as instructed by the court, they were then acting as representatives of the appellee Isaacs at the drawing under the agreement had with him that they would represent him there and would claim the car for him if any of his tickets turned over to them proved to be the winning ticket.

It is conceded that this defensive plea, based on the Brotherhood's conducting this unlawful lottery plan for disposing of this car, might have been urged by Isaacs, the purchaser of the tickets, and Isaacs might have, because of the illegality of the lottery tickets bought and so issued him, on such ground tendered them back to the Brotherhood and reclaimed the price paid therefor. Also, it being further conceded that the ticket, by its express terms, required the holder of the winning ticket to be present in person at the drawing in order to claim the car thereunder, compliance therewith was made a condition of the contract between the ticket holder and the Brotherhood, which was available to it as a defense against Isaacs' claim to the car, were such plea here made by it, as it is admitted that Isaacs was not present at the drawing and did not personally present the ticket. However, neither of the parties entitled to raise these defenses are here presenting them and we are of the

opinion that while they might have been presented as above stated, having been waived or else not raised by those to whom available, they cannot be now here raised by or made available as a defense to the appellants to defeat their contract to carry out the terms of their entirely separate and distinct agreement had with Isaacs to represent him at the drawing and if one of his tickets held by them proved to be the winning ticket, to claim the car for him.

This question, as to what are the applicable principles in such case controlling, was raised in the well-known case of Martin v. Richardson, 94 Ky. 183, 21 S. W. 1039, 14 Ky. Law Rep. 847, 1040, 19 L. R. A. 692, 42 Am. St. Rep. 353, wherein Judge Hazelrigg, speaking for the court, in discussing such question raised upon very similar facts, said:

"Here, then, we have a case where a party holds a ticket the value of which does not depend on any chance, or its payment on the voluntary action of the company, and the legal obtention, title, and ownership of which is not called in question, or tainted with any sort of illegality. It is fraudulently obtained from the possession of its rightful owner, and we can see no reason why recovery may not be had. Such, indeed, would seem to be the case if the purchase or exchange were shown to have occurred in Kentucky. This is not an action on a contract of sale or purchase of a lottery ticket. The transaction out of which the suit springs, and which forms its sole basis, is subsequent to any alleged illegal act, and wholly disconnected with it. In Armstrong v. Toler, 11 Wheat., 258 [6 L. Ed. 468], Chief Justice Marshall approved the opinion of the lower court, which was to the effect that a new contract founded on a new consideration, although in relation to property respecting which there had been unlawful transactions between the parties, is not itself unlawful.' * * * In Catts v. Phalen, 2 How. 376 [11 L. Ed. 306], * * * the supreme court said: ' * * * The principle of illegal contracts is (See Story, Confl. Law. secs. 248, 149), after the illegal act is done, if the new contract is wholly unconnected with the illegal act, and is founded on a new consideration, and is not a part of the original

scheme, although it may be known to the party with whom the contract is made, it will make no difference that such new and independent contracts are made with the person who is the contractor or conductor of the original illegal act, if it is wholly disconnected therefrom.' "

In the instant case the contract had between Isaacs and the appellees was not one for the sale or purchase of lottery tickets but a legal and distinct one, providing that they were to represent him at the drawing by presenting there the tickets, which he had then purchased, entitling him to participate in the drawing for the car. In reliance upon this agreement, it was found by the jury that he turned over to them his tickets and that they, accepting them for that purpose and with such understanding, stated that they would represent him at the drawing, and that while so acting for him they were able to win for the defendant the car awarded him as the holder of the winning ticket, No. 10023. Under such conditions, we are clearly of the opinion that the defendants should not be suffered to now escape a just accounting of their agency agreement with Isaacs, upon the pleaded ground that Isaacs' purchase of the tickets and the lottery plan of awarding the car were illegal acts, but should be, as was adjudged, required to carry out this independent agreement had by them with Isaacs. It is our opinion that these defenses cannot be invoked by appellants to defeat their living up to their entirely separate and independent agreement had with appellee. Such earlier contract forms no part of the consideration for appellant's agreement to represent him in the drawing, and therefore cannot be made to play any part in determining the rights of the parties as between themselves under the terms of their own agreement. See Rountree v. Ingle, 77 S. E. 931, Ann. Cas. 1915A 1002, 45 L. R. A. (N. S.) 776; Armstrong v. Toler, 6 U. S. (L. Ed.) 468; Owens v. Wright, Ann. Cas. 1914D 1021; Feltner v. Feltner, 116 S. W. 1196; Matta v. Katsoulas, 192 Wisc. 212, 50 A. L. R. 291; McBlair v. Gibbs, 15 U. S. (L. Ed.) 132; State v. Capital Bank, 257 Pac. 993, 53 A. L. R. 1356.

The further objection urged by appellant, that the judgment is erroneous with respect to appellant Polie Leake, we find to be without merit, in that the

evidence amply shows that the agreement relied on by Isaacs was made with the appellant Polie Leake, with instructions that he might, if he wished, turn over to his wife, as agent, the tickets for holding. Under such circumstances his handling of the tickets was simply an act done in conformity with the terms of their agreement and cannot be interpreted as one releasing the appellant Polie Leake from his contract to act as Isaacs' agent and representative.

The judgment appealed from being one requiring the appellants to carry out their agreement with plaintiff, and such holding being in harmony with our views, it follows that the judgment is affirmed.