Ransome v. State.

RANSOME v. STATE.

(*Knoxville.* October 22, 1892.)

1. CONSTITUTIONAL LAW. *Amendatory statutes, necessary recitals in.*

The constitutional requirement that amendatory statutes shall recite in their "caption, or otherwise," the "title or substance" of the statute amended, is satisfied by the recital of the *subject* of the statute amended in the *body* of the amendatory statute, without more.

Constitution construed: Art. II., Sec. 17.

Case cited and approved: State *v.* Gaines, 1 Lea, 734.

2. SAME. *Same. Case in judgment.*

Section 4881 (T. & S.) Code makes horse-racing legal when run upon a regular track. Acts 1891, Ch. 115, amends said section of the Code by providing "that said section and this amendment shall apply to trotting and pacing races as well as running races."

*Held:* The amendatory Act sufficiently recites the "substance" or subject of the original statute—to wit: horse-racing—and is valid.

Code construed: § 5701 (M. & V.); § 4881 (T. & S.).

Acts construed: Acts 1891, Ch. 115.

*Question reserved:* Is it a sufficient recital of the "title" of the Act amended to refer to it in caption or body of amendatory Act as a designated section of the Code of Tennessee?

3. GAMING. *Horse-racing.*

Betting on horse-races is illegal unless the race is run, trotted, or paced upon a track situated in this State, and inclosed by a substantial fence, and the bet or wager made within that inclosure. Although

Ransome *v.* State.

the race was run upon a lawfully inclosed track, the bet or wager was not made within the inclosure under the facts in this case.

## FROM HAMILTON.

Appeal in error from Circuit Court of Hamilton County. JOHN A. MOON, J.

F. O. WERT for Ransome.

Attorney-general PICKLE for State.

LURTON, J. Appellant was convicted upon an indictment which charged him with unlawful gaming. The indictment was for betting upon horse-races, the betting not having been done upon and within a lawful race-course within this State.

The Act making such betting unlawful is Ch. 115, Acts 1891, and it is in the following words:

"An Act to amend Section 4881 of the Code of Tennessee, being Section 5701 of Milliken & Vertrees' revisal.

"SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee*, That Section 4881 of the Code of Tennessee be, and the same is hereby, amended as follows, viz.: That said section and this amendment shall apply to trotting and pacing races as well as running races.

"Sec. 2. *Be it further enacted,* That it shall be unlawful gaming to bet or wager in any way upon any horse-race unless the race-track upon which the race is run, trotted, or paced be inclosed by a substantial fence, and the bet or wager to be made within said inclosure upon a race to be run, trotted, or paced within said inclosure."

It is objected that the Act is void under Art. II., Sec. 17, of the State Constitution, requiring amendatory Acts to recite in their "caption, or otherwise," the "title or substance" of the Act amended.

Reserving the question as to whether a reference in the title to the law amended as being a particular section of the Code of Tennessee, we are of opinion that this amendment is valid, because there is contained in the body of the Act a sufficient reference to the "substance" of the Act amended. The requirement of the Constitution is that the amending Act shall contain in its "*caption, or otherwise,*" the "*title* or *substance*" of the Act amended. If the caption contains no reference to the "title or substance" of the Act amended, we must then see if in any other way the Act recites the Act amended. No other meaning can be attached to the word "otherwise," used in this clause. The recital in the amending Act need not be in the caption if a sufficient recital is "otherwise" made of the amended Act.

Neither does the Constitution require that the

amended Act be recited by its "*title*" alone, for if the "*substance*"—that is, the subject of the Act amended—be recited, it will be a sufficient recital. Such a reference to the subject or substance will sufficiently identify the law intended to be amended. When we turn to § 4881 of the Code of Tennessee, we find that its subject was horse-racing. This subject is recited in the Act of 1891, the language of the first section being "that said section and this amendment shall apply to trotting and pacing races *as well as running races*." This clearly recites the substance or subject of the Act amended as one referring to *running races*. The recital of the substance of the Act amended is quite as clear and satisfactory as that found in the Act sustained by this Court in *State, ex rel.*, v. *J. L. Gaines, Comptroller*, 1 Lea, 734.

The manner in which appellant conducted his business, as stated by himself, was this: "I operate the place called the Turf Exchange, in the city of Chattanooga; that is, I am the agent of Lon Powell, who is a book-maker on the race-tracks at Memphis and Nashville. I take orders for money here, in the city of Chattanooga, and the same is telegraphed to Memphis or Nashville, or wherever the races are being run. I use a card like that filed as evidence, and the depositors of the money have to pay the additional sum of ten cents for the transmission of the money to either of the two places. I receive a salary of three dollars per day for my services as agent of the

party mentioned. I settle with Powell once a week, and give a statement of all the business. If one wishes to place money on a horse and books are closed at the race-track, the money is refunded to him, less the ten cents. It is thoroughly understood among all who deal at the exchange that I am acting only as agent of others, and that they have to pay the additional ten cents as commission for running the business, or to defray the expenses. All orders taken are at once sent to the race-track to the parties in the inclosure, and if the party making the bet loses, the money is retained, and if the party is successful, I pay the money to him. The tracks at the places named, where the races are run, are regular race-tracks, are in the turf association, and are inclosed with good and substantial fences."

Another witness adds this further description of the methods of the exchange: "The defendant has all the horses which are going to run in the race put upon a board, where they can be seen, and also has the odds posted where they can be seen by those who desire to put any money on the race. We give to Mr. Ransome, say $10; he notifies us that he represents Lon Powell, who is a book-maker on the track at Memphis, and that money will be sent there to be placed on the horse we desire to bet on. Mr. Ransome has a telegraph-wire in the room, and sends the money direct to the track; at least, he says he does. If

Ransome *v.* State.

the horse we bet on wins the race, Mr. Ransome pays us the money."

The card or receipt furnished the better is in these words:

" COMMISSION OFFICE.

"NO BETTING DONE OR PERMITTED HERE.

" CHATTANOOGA, TENN., ———, 1892.

. " Received ——— Dolls., to be sent on commission to race-track at ———, and there placed. Horse $\frac{1st.}{1st\ or\ 2d.}$ ———, at track quotations, if such can be obtained.

"It is understood and agreed that the undersigned act in the premises as common carriers only, for the purpose of transferring the money above mentioned to the place designated.

" Charge commission, ten cents, for forwarding.

"*Notice.*—Amount of order returned, less commission, where a failure .to execute is due to accidental or other unavoidable delays in transmission."

From this evidence, we cannot conclude but that the conviction was authorized. The betting was done in Chattanooga, and not within the inclosure of a race-course. That defendant was acting as agent for another, who was selling pools on an authorized track, is of no importance. The bet was made in Chattanooga, although the money might be sent to the principal on the track. If the bet was lost, the money was retained. If the

46—7 P

horse bet on won, defendant paid the bet at the place where it was made. The Act only authorizes betting on races run in this State, and within inclosures, and the betting must be done within the track. If Mr. Powell could not make, offer, or accept bets except upon and within such track, he cannot do by an agent what he could not do himself. The object of the exception made by § 4881 was to permit gaming upon races to encourage horse-raising and improve horse-stock. The limitation put upon the Act excepting such gaming from the ordinary penalties of the law, is to limit such gaming to the time and place where the race is being run. If the business done by defendant is not gaming at the place where the money is put up on the race, but is to be treated as a bet made at the place to which the money is to be sent, and by the person for whom the agent acts, then there would be nothing unlawful in a "turf exchange" operating for principals on races run without the State, and thus gaming at all times and on all races run anywhere, would be licensed, by resorting to the scheme shown by this evidence. The statute plainly intended to legalize betting done within a lawful track, and nowhere else.

Affirm the judgment.