This is a replevin suit brought in the Chancery Court of Davidson County, Part Two, to recover the possession of a Ford automobile.
The bill was filed on September 15, 1936, by Ruth Cuffman, as complainant, against Elizabeth Blunkall, W.S. Miles, R.H. Pigue, deputy sheriff, T.M. Gourley, deputy sheriff, and L.A. Bauman, Sheriff, of Davidson County, Tennessee, as defendants.
Before the cause was at issue below, the complainant, by leave of the court, voluntarily dismissed her suit against all of the named defendants except Elizabeth Blunkall, who answered the bill, and the cause was subsequently heard by the chancellor, and his decree was thereupon entered as follows:
"This cause came on to be heard on May 4, 1937, before Chancellor James B. Newman, upon the pleadings and the testimony of witnesses examined in open court by agreement of the parties filed in the cause and argument of counsel;
"From all of which the Court is of opinion and finds that the defendant, Elizabeth Blunkall, was the owner of the ticket that drew the car involved and that this ticket was delivered by her on the day preceding the night of the drawing to the complainant, Ruth Cuffman, *Page 515 
as her agent, and that Ruth Cuffman held the ticket as agent of Elizabeth Blunkall and that the title and possession of the car involved was in Ruth Cuffman as agent for Elizabeth Blunkall, and that Elizabeth Blunkall is entitled to possession of this car.
"The Court further finds that the car involved was a Ford V-8, 1936 model, and was delivered to the complainant some time in September, 1936, and had been driven only 166 miles and since it was replevied in September, 1936, the car has been in the hands of the bondsmen of complainant and in storage. The only testimony as to the value of this car is by the father of Elizabeth Blunkall who operates an automobile repair shop and does not claim nor does the proof show that he is an expert qualified to testify as to the market value of cars, and his testimony that this car has depreciated in value $259 is a mere conclusion.
"It appears from the undisputed facts that it has been about six months since this car was delivered, that it has been driven only 166 miles and is in practically the same condition except the change of model, as it was when sold, and the Court finds and fixes as nominal damages for its detention, the sum of $25.
"It is therefore ordered, adjudged and decreed by the Court that the complainant Ruth Cuffman return the automobile involved to the defendant Elizabeth Blunkall and on failure so to do that the defendant, Elizabeth Blunkall have and recover of the complainant, Ruth Cuffman, the sum of $659, the value of the car on the date of its seizure under the replevin writ, with interest from the date of such seizure, to-wit, September 30, 1936, to date, amounting to $23.33 and making a total of $682.33, said judgment to be satisfied by return of the said automobile to the defendant; and that the said defendant have and recover of said complainant and J.M. Cuffman and S.T. Cuffman, sureties on her replevin bond, the sum of $25 as damages for the seizure and detention of said automobile, and all costs of the cause, for which an execution will issue.
"And it is further ordered, adjudged and decreed by the Court that if said automobile is not returned to the defendant and the writ of fieri facias issued therefor is returned unsatisfied in whole or in part, the defendant may have a final judgment over by motion without notice against the complainant and her sureties on the replevin bond for the sum of $682.33.
"Whereupon the complainant moved the Court for a new trial on the following grounds:
"1. That there is no evidence to support the decree of the Court.
"2. The evidence preponderates against the decree of the Court and the decree is against the law governing the matters in controversy; which motion was overruled by the Court and the complainant excepted thereto. *Page 516 
"To so much and such parts of the decree as renders judgment against the complainant for the possession of the car and judgment against her for damages for the detention and costs, the complainant excepts and prays an appeal to the present term of the Court of Appeals sitting at Nashville, which is by the Court granted upon her perfecting her appeal, as required by law, and she is allowed thirty days from the entry of this decree in which to perfect her appeal and file her bill of exceptions."
In due season, the appellant, Ruth Cuffman, filed the oath prescribed for poor persons and a bill of exceptions, for the purpose of perfecting her appeal.
At the threshold of the consideration of this case, we are met with a motion on behalf of the defendant-appellee, Elizabeth Blunkall, to dismiss the appeal of the complainant-appellant, Ruth Cuffman, upon the ground that the appellant has not perfected her appeal "as required by law," in that, she has filed no appeal bond, but is attempting to prosecute her appeal upon the pauper's oath.
The contention of appellee is, in substance, that an appeal by complainant on the pauper's oath leaves the defendant without security for the return of the automobile and the damages awarded for its detention. This is, we think, a mistaken assumption.
When this suit was instituted in the chancery court the complainant filed a replevin bond in double the value of the property replevined ($1318), with two sureties, and the solvency or sufficiency of the bond is unquestioned on the record. If this court should affirm the decree of the chancellor awarding the possession of the automobile in controversy to the defendant, we would, of course, affirm the judgment against the complainant and the sureties on her replevin bond. The defendant has precisely the same security for the value of the automobile and the damages for its detention that she had while the cause was pending in the chancery court.
In the case of Scott v. Brandon, 125 Tenn. 314, 317, 318, 143 S.W. 601, the court said:
"While it is true a replevin suit cannot be instituted on the pauper oath, the reason is that in such an action there is a transfer of the property from the defendant to the plaintiff, immediately upon the bringing of the suit, before the right of the conflicting claims is determined. Bond is therefore required of the plaintiff; `the rule for the security,' as said by the court, `being founded on the natural law that one shall not wrongfully and under color of the law appropriate to himself that which belongs to another.' Horton v. Vowel, 4 Heisk., 622. As observed by the court in the same case, the bond in replevin suits is required for the security of the property, not for the security of the costs.
"In Horton v. Vowel, supra, it was held that replevin could not *Page 517 
be prosecuted in forma pauperis. However, the statutory bond having been given for double the value of the property at the institution of the suit, it was permissible for the plaintiff, when during the progress of the suit the costs had accumulated to a larger amount than the bond would protect, on a rule upon him for further security, to take the pauper oath. The court said:
"`After the property is secured, the action, in all other respects, is nothing different from the more common forms. It is therefore a consequence that, as to such costs as exceed the penalty of the bond, the plaintiff may prosecute the suit in forma pauperis.'"
In support of appellee's motion to dismiss the appeal, her counsel cite Horton v. Vowel, 4 Heisk., 622, and Kincaid v. Bradshaw, 6 Baxt. 102.
In Horton v. Vowel, supra, the Supreme Court had under consideration an appeal in error from a judgment of the circuit court dismissing the plaintiff's suit for want of security forcosts. The court recited the statutes relating to theinstitution of actions of replevin, and, after a statement that "an action of replevin, cannot under a proper construction of this statute, be prosecuted in forma pauperis," with the reasons for such rule, the court said: "After the property is secured, the action, in all other respects is in nothing different from the more common forms; it is, therefore, a consequence that as to such costs as exceed the penalty of the bond the plaintiff may prosecute the suit in forma pauperis;" and the court reversedthe judgment of the circuit court; thus ruling that "after the property is secured" the plaintiff may prosecute a replevin suit on the pauper's oath.
Kincaid v. Bradshaw, supra, was an action of replevin commenced before a justice of the peace and carried to the circuit court by appeal, no bond having been given, but the pauper's oath being substituted, both upon the institution of the suit and upon the appeal. During the pendency of the case, the defendant moved to dispauper the plaintiff and dismiss the suit because its prosecution was frivolous. The circuit court dismissed the case, being satisfied by the testimony of disinterested witnesses that its prosecution was frivolous. From this judgment the plaintiff appealed to the Supreme Court upon the pauper's oath; but the evidence on which the circuit court acted was not preserved by bill of exceptions, and the Supreme Court held that it was bound to presume that there was sufficient evidence to sustain the action of the court below. Having thus ruled, the Supreme Court, in its opinion (which is quite brief) then concluded as follows: "But it was decided by this court in Horton v. Vowel, 4 Heisk., 622, that the action of replevin cannot be prosecuted under the pauper's oath, nor can an appeal to this court be prosecuted by the plaintiff except *Page 518 
upon the bond required by law. The judgment of the court below dismissing the suit was not erroneous, and is affirmed."
In order to arrive at the meaning of the court, the language of a judicial opinion should be interpreted in the light of the case with which the court was dealing. In Kincaid v. Bradshaw, supra, no replevin bond had been given, either at the institution of the suit or subsequently; hence an appeal to the Supreme Court could not be prosecuted in the absence of the bond required by law, that is, the replevin bond to secure the property replevined and damages for its detention. It will be observed that, in that case, the court did not dismiss the appeal, but affirmed the judgment of the circuit court dismissing the suit. It is also seen that the court cited, with approval, Horton v. Vowel, supra, wherein the court had said that "after the property is secured, the action, in all other respects is in nothing different from the more common forms."
In Hamilton v. Henney Buggy Co., 102 Tenn. 714, 718, 52 S.W. 160, 161, the court said: "There is no statute requiring bond for more than damages and costs on appeal to this court in replevin suits," — the "damages, consisting of the interest on the recovery."
It appearing from the record that the complainant gave a proper and sufficient replevin bond at the inception of this suit, upon which the chancery court rendered judgment in favor of the defendant, we are of the opinion that the complainant is entitled to prosecute her appeal to this court on the pauper's oath. The defendant's motion to dismiss complainant's appeal is, therefore, overruled.
The chancellor's findings of fact are embraced in his decree, which has been copied in full herein. The appellant's assignments of error are that (1) "There is no evidence to support the decree of the court;" (2) "The evidence preponderates against the decree of the court and the decree is against the law governing the matters in controversy;" and (3) "The entire decree or such parts of same which renders judgment against the complainant for the possession of the car and the judgment against her for damages for detention and costs is also assigned as error."
The foregoing assignments are quite general and indefinite, and it is doubtful whether they are sufficiently specific to conform to the rules governing assignments of error. See Rule 11 in Williams's Annotated Code, vol. 7, page 546, and numerous cases cited in Crawford's Tennessee Digest, vol. 1, pages 234-240.
However, as the case was tried on oral testimony of witnesses examined in open court "by agreement of the parties filed in thecause," and, therefore, it must be heard de novo in this court, we will treat the assignments of error as asserting that the decree of the chancery court is not supported by the preponderance of the evidence.
Complainant alleges in her bill, in substance, that she is the owner *Page 519 
of a certain Ford automobile coach, 1936 Model, motor No. 18 — 3198141, now located in the Paige Garage, on Fifth Avenue and Commerce Street, Nashville, Davidson County, Tennessee; that said automobile is "brand new" and, in its present condition, is worth $659 in cash; that defendant, Elizabeth Blunkall, has taken said automobile out of complainant's possession by means of a void replevin suit before a justice of the peace of Davidson County, Tennessee; that said replevin suit is void because, in fixing the amount of the replevin bond, the automobile was valued at less than $500 in order to bring the case within the jurisdiction of a justice of the peace, and the complainant's surety on said bond is not worth the amount of the bond above his exemptions; that the value of said automobile exceeds $500 and the justice of the peace therefore has no jurisdiction of said replevin suit, and if complainant "allows the matter to run along and does not assert her rights, the car will likely be worn out before she can ever get it into her possession;" that she is entitled to the immediate possession of said automobile, and the defendants are unlawfully withholding same from her "under the guise of legal proceedings null and void on their face."
Complainant filed, as exhibit A to her bill, a bill of sale which, she alleged, conveyed said automobile to her on September 11, 1936.
Complainant prayed that the writ of replevin issue upon bond executed, and that the property be restored to complainant; that complainant have a decree against defendants for damages for detention and the abuse of said property while in their possession.
Defendant Elizabeth Blunkall filed an answer to complainant's bill, in which she denied that complainant is the owner of the automobile replevined in this case, or entitled to the possession thereof, and she alleged that she (the defendant) is the lawful owner, and entitled to the possession, of said automobile. Defendant admits in her answer that said automobile is "new," and she admits the value placed thereon by the allegations of the bill.
Complainant also admits in her answer that the justice of the peace did not have jurisdiction of the replevin suit (mentioned in complainant's bill) and she states that, for that reason, she has had said J.P. suit dismissed, such dismissal being without prejudice to her rights in this suit. Defendant "denies that she had any wrongful intent in filing suit in the justice court."
We find that the greater weight of the evidence shows the facts which will now be stated.
On and for a time prior to September 11, 1936, the Crescent Amusement Company operated a number of moving picture theaters in the city of Nashville, Tennessee, including one known as the Woodland Street Theater. At these theaters each person paying for admission during a specified period was given a ticket which entitled him (or *Page 520 
her) to participate in a "drawing" for (among other things) a Ford automobile, which "drawings" were conducted by the Crescent Amusement Company in each of its theaters in Nashville on stated, and previously advertised, occasions. One of these "drawings" occurred in the evening of September 11, 1936. According to the "regulations" of the drawings, as advertised by the Crescent Amusement Company, the tickets were "not transferable" and "the holder of the number" had "to be present to win."
The complainant and defendant were unmarried young women, living with their respective parents in the same general neighborhood in the city of Nashville. They were intimate friends and associates and they "usually went together to the show."
Shortly after noon on September 11, 1936, complainant visited the home of defendant and proposed to defendant that they go to the show that night. Defendant stated to complainant that she couldn't go because she "didn't have the money;" whereupon complainant proposed that she would take defendant's ticket for her, and agreed that if defendant's ticket won the car defendant would get the car. Thereupon defendant delivered to complainant two tickets, one belonging to defendant and one belonging to defendant's mother — the latter ticket being delivered to complainant with a similar agreement. Before handing the two tickets to complainant, the defendant made a memorandum of the numbers of the tickets — indicating which ticket belonged to her and which to her mother, and also wrote, in pencil, her initials, "E.B." — on the corner of the back of her ticket, and the word "mamma" on the back of her mother's ticket. The complainant had six tickets belonging to her. Complainant attended the drawing at the Woodland Street theater that night and when the number winning the automobile was announced, complainant handed the ticket bearing that number to an usher, who carried it to the manager conducting the drawing, and the manager announced "Miss Ruth Cuffman," the complainant, as the winner of the automobile, and instructed her to meet him at 10 o'clock on the following morning at the office of the Crescent Amusement Company and the car would be delivered to her.
After the "drawing" as aforesaid, complainant called defendant's home on the telephone, from the theater, and stated to defendant's mother, who answered the telephone, to "come and get her, she had the car;" that she had something to tell them but couldn't tell them over the phone. Thereupon, defendant, with her father and mother, drove to the Woodland Street Theater, and complainant there said to defendant: "It was your ticket that got the car." Defendant and her parents then took complainant to her home in their car, and on the way complainant told defendant, in substance, that as soon as *Page 521 
she got the car she would call defendant and come to defendant's home.
On the following morning (September 12th), complainant went with the manager of the Woodland Street Theater to a Ford dealer in the city of Nashville, where the automobile in controversy, together with a bill of sale for same, was delivered to complainant; but complainant did not call defendant or come to her home, and would not answer the telephone (although defendant called for her repeatedly thereafter), and, according to the undisputed testimony of defendant, complainant has not spoken to defendant since the night of September 11, 1936.
Defendant secured possession of the automobile in controversy by means of the aforesaid replevin suit in the court of the justice of the peace; but it was later taken from defendant's possession and delivered to complainant, pursuant to the replevin writ in this case.
Upon a review and consideration of all the evidence, we concur in the chancellor's findings that the defendant, Elizabeth Blunkall, was the owner of the ticket that drew the car involved, and that this ticket was delivered by her on the day preceding the night of the drawing to the complainant Ruth Cuffman, as her agent, and that complainant Ruth Cuffman held the ticket as agent of Elizabeth Blunkall, and that the title and possession of the car involved was in Ruth Cuffman as agent for Elizabeth Blunkall, and that Elizabeth Blunkall is entitled to the possession of said automobile.
It is argued on behalf of complainant that the automobile in controversy was obtained in an unlawful gambling transaction, and, therefore, the court will not aid either party involved. It is somewhat difficult to understand how the rule which complainant thus seeks to invoke would, if applicable, aid the complainant, who, by her bill in this case, is seeking the aid of the court to obtain possession of the automobile.
But, aside from the suggestion just made, there are two sufficient answers to the contention that the court should deny its aid because the automobile was obtained in a gambling transaction.
(1) Under the holding in State ex rel. v. Crescent Amusement Co., 170 Tenn. 351, 95 S.W.2d 310, the automobile in controversy was not obtained in a gambling transaction or lottery.
(2) An agent receiving profits cannot set up against his principal the illegal character of the transaction in which they were realized. The maxim, in pari delicto potior est conditio defendentis has no application to such case. Pointer v. Smith, 7 Heisk., 137, 144; Memphis Arkansas River Packet Co. v. Agnew,132 Tenn. 265, 272, 177 S.W. 949, L.R.A., 1916A, 640.
It results that the appellant's assignments of error are overruled, *Page 522 
and the decree of the chancery court is affirmed, and a decree will be entered accordingly.
The costs of the appeal will be adjudged against the appellant Ruth Cuffman.
The cause will be remanded to the Chancery Court of Davidson County, Part Two, for the execution of the decree.
Crownover, J., and E.C. Arnold, Special Judge, concur.