In the Matter of the Application of WILLIAM RHINELANDER STEWART and Others, Petitioners, for an Order Directing the Filing and Recording of the Certificate of Incorporation of PARI-MUTUEL MESSENGER SERVICE, INC., against THE DEPARTMENT OF STATE OF THE STATE OF NEW YORK and Hon. MICHAEL F. WALSH, as Secretary of State of the State of New York, Respondents.

Supreme Court, Special Term, Albany County, September 5, 1940.

*Elbert, McGahan, Mole & Becker* [*A. Chalmers Mole* and *Charles E. Elbert* of counsel], for the petitioners.

*John J. Bennett, Jr., Attorney-General* [*Joseph M. Mesnig, Assistant Attorney-General,* of counsel], for the respondents.

BERGAN, J.  The petitioners have submitted to the Secretary of State for filing a certificate of incorporation for the Pari-Mutuel Messenger Service, Inc.  Among the corporate purposes specified in the certificate is the right to act as agent for persons making bets on horse races and to place such bets at race tracks where pari-mutuel betting is now authorized by law.  (Laws of 1940, chap. 254.)

Bets will be accepted by the corporation from persons who are not in actual attendance at the race track.  The corporation, acting as agent, will undertake to receive money from persons outside the race track with instructions for the placing of pari-mutuel bets at the track; to transmit such money to the track; to place the pari-mutuel bets at the track as directed; to collect the amount received if the bets are won, and to pay over the proceeds to its principals.  These are the main purposes indicated by the certificate of incorporation.  They form the basis of the objection to the certificate by the Secretary of State who has rejected the certificate on the ground that these enumerated corporate purposes are not lawful purposes within the intent of section 5 of the Stock Corporation Law.  This proceeding is maintained by petitioners in pursuance of article 78 of the Civil Practice Act to review the determination of the respondents in rejecting the certificate and to compel its acceptance.

Since the adoption of the Constitution as proposed by the Constitutional Convention of 1894, a sweeping prohibition against gambling has been a part of the organic law of the State.  (State Const. art. I, § 9.)  By the amendment to that section adopted in 1939 and effective January 1, 1940, " pari-mutuel betting on horse races as may be prescribed by the Legislature " was excepted from the general constitutional prohibition.  The exception was, in express language, made subject in its operation to the regulation of the Legislature.

The subject-matter of the exception would, in any event, have been within the legislative power to regulate or to prohibit even without the constitutional direction for legislative prescription.  No right to pari-mutuel betting itself was created by the Constitution.  What was created is an exception to the general prohibition which had theretofore removed all gambling from the scope of legislative sanction or permission.  With the prohibition removed against this

type of gambling the field of legislative action upon the subject was opened. The Legislature was freed from its former restraint and it became competent for it to authorize, if it deemed proper, and to regulate, pari-mutuel betting on horse races.

The Legislature undertook to exercise the authorized power to permit, and at the same time quite carefully to regulate, pari-mutuel betting on horse races by the act of 1940 (" An act in relation to prescribing the conditions under which the pari-mutuel method of betting on horse races shall be lawful," etc.).

The statute provides that such pari-mutuel betting on horse races shall be lawful " if conducted in the manner * * * provided by this act, notwithstanding the provisions of any other law * * * prohibiting or restricting lotteries, pool selling or bookmaking, or any other kind of gambling." (Laws of 1940, chap. 254, § 2.) It is further provided in that section that betting " shall only be conducted within the grounds or enclosure of a race track " where and when pari-mutuel betting is authorized.

This language seems to provide an exclusive lawful means of making a pari-mutuel bet. It is permitted " only " if " conducted " at the race track. To this extent is the statute repugnant to and supersedes the general statutory scheme prohibiting lotteries, bookmaking and other forms of gambling. Except in the field thus explicitly occupied by the Legislature, the general statutory prohibition obtains. When pari-mutuel betting departs from the manner prescribed by the act of 1940 it becomes as unlawful as any other form of gambling. The statute is fairly susceptible of no other construction.

The provisions of section 986 of the Penal Law render unlawful the forwarding of any money or thing of value for the purpose of being bet or wagered by or for any other person or the acting as custodian or depository for gain or hire of any money or property which is the subject of a bet or wager. A statute which authorizes the conduct of pari-mutuel betting only within the inclosure of a race track is not repugnant to this general statute in its effect upon transactions outside a race track.

Since section 986 of the Penal Law has not in this respect been expressly repealed or superseded, and since it is neither so inconsistent with nor so repugnant to the act of 1940 that a repeal is worked by necessary implication, its penal provisions continue in effect outside of the race tracks and operate to render the transmission of bets to a race track unlawful.

Entirely aside from the subsistence of consistent penal provisions paralleling the act of 1940, there is some merit to the argument that the agency described in the certificate of incorporation is an

integrated part of the " conduct " of a bet. The regular acceptance of money to be wagered; the transmission of such money to the place of betting; the placing of the bet and the collection of the proceeds all seem to fall within the usual definition of the " conduct " of a bet.

Certainly when this mode of betting is adopted, it is difficult to segregate these successive acts, and to eliminate some of them as not being parts of the " conduct " of the bet. It would seem to follow that those parts of the transaction outside of the race track are unlawful under the act of 1940 itself, since it permits only betting conducted " within the grounds or enclosure of " a race track where pari-mutuel betting is authorized.

The statute under which pari-mutuel betting is authorized is the product of careful draftsmanship. Its object seems to be to discourage gambling among persons most likely to be injured by it. The minimum charge for admission to the race tracks affected (§ 15) and the elimination of passes except for persons having business at such tracks (§ 17) are steps aimed in this direction. Moreover, the conduct of pari-mutuel betting is fully and precisely regulated. It is placed by the statute under adequate supervision and in responsible hands.

The incorporators of this proposed corporation are men of probity. Their integrity is conceded by the Attorney-General. A corporation controlled by them would act honestly in the discharge of its obligations. But, if the purposes of this corporation are judicially declared lawful in this State, it would become equally lawful for agents to establish themselves in unlimited numbers and wholly without public control or regulation for the purpose of transmitting bets to race tracks. Horse rooms would immediately become lawful agencies; their numbers would multiply; the distinction between the " agent " underwriting the bet himself and transmitting it to a pari-mutuel race track would then be a matter of subtle bookkeeping. Police control or regulation would be impossible.

The merits of this argument, of course, are for the Legislature and not for the court. But these results are important in searching the legislative intent in the act of 1940. The Legislature in carefully prescribing and thoroughly regulating the conditions of pari-mutuel betting on horse races gave no indication that it intended to permit widespread, potentially irresponsible and wholly unregulated transactions of betting outside race tracks under the guise of an agency to perform acts thereby made lawful within a race track. The contrary intent is the only one fairly deducible from the scheme of the statute and from the language employed.

Had the Legislature intended to permit betting agencies to be established outside of race tracks, it is quite apparent from even a casual examination of the safeguards provided in the act of 1940 that it would have imposed equally careful restrictions upon the number of such agencies in the State and their geographic distribution, would have prescribed their financial responsibility, and would have set up machinery for adequate supervision and regulation.

I reach the conclusion, accordingly, that the purposes of the proposed corporation are not lawful and that the Secretary of State properly rejected the certificate. Since no triable issue of fact is presented by the pleadings, a final order may be submitted dismissing the petition, without costs.