THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* SIDNEY P. HEBERT, Defendant.

City Magistrate's Court of New York, Borough of Queens, Felony Court, December 15, 1952.

*T. Vincent Quinn, District Attorney (William Kerwick* and *Benjamin J. Jacobson* of counsel), for plaintiff.

*Albert A. Oppido* for defendant.

SHAPIRO, M.   Defendant is charged with a violation of section 986 of the Penal Law (book-making) and a trial has been had thereon before this court sitting as a Court of Special Sessions.

On July 10, 1952, at the Aqueduct race track, the defendant accepted money from several of his friends for the purpose of betting it on horses running in races that day by purchasing pari-mutuel tickets for them.   If they won, they gave him something for his services.   This occurred in the paddock which is within the fenced enclosure of the track but is in the portion of the track which may be entered without paying for admission to the track.   Moreover, there are no mutuel windows in this portion of the track; to reach the mutuel windows one is required to pay an admission price and pass into the track proper.   Therefore, one does not necessarily have to be a patron of the track to be in that portion of the premises where the occurrence took place.

It is the defendant's contention that the foregoing facts do not spell out a violation of section 986 of the Penal Law by virtue of section 2 of chapter 254 of the Laws of 1940 which exempts pari-mutuel betting at a race track from the operation of the penal statute.   Thus there is squarely presented for determination the question whether under existing statutes the putting in operation *outside* of the confines of a race track of a wager on a horse race which will eventually be made through the pari-mutuels is a violation of section 986 of the Penal Law.

The question thus raised is of extreme importance.   As this court said in reserving decision on the motion to dismiss made after both sides had rested: " The question raised in this case is a fundamental one and goes far beyond what this defendant did.   If I should hold in this case that this defendant is not guilty on the conceded facts, I would be holding, as a matter of law, that you and I could open a store and put up a sign that we would accept wagers upon horse racing to be run at pari-mutuel tracks in this State and that we would place these wagers in the pari-mutuel machines for a consideration ".

Section 986 of the Penal Law provides that: " any person who receives, registers, records, or forwards  *  *  *  in any manner whatsoever, any money, thing or consideration of value, bet or wagered, or offered for the purpose of being bet or wagered " upon the result of any trial or contest of skill, speed or power of endurance of man or beast is guilty of a misdemeanor.   That section, however, does not apply to pari-mutuel betting at a race track because section 9 of article I of the New

York State Constitution (passed on November 7, 1939, eff. Jan. 1, 1940, amdg. 1938 Constitution, art. I, § 9) provides that pari-mutuel betting *as may be prescribed by the Legislature* is excluded from the prohibition against the authorization of all other types of gambling. Pursuant to the authority vested in it by this constitutional provision, the Legislature in section 2 of chapter 254 of the Laws of 1940 prescribed *" that pari-mutuel betting on horse races shall be lawful in this state "* if *" conducted within the grounds or enclosure of a race track "*. (Italics supplied.)

The question for decision therefore is whether the Legislature intended to exempt from the operation of section 986 of the Penal Law only such pari-mutuel bets as are made by patrons of the race track where the pari-mutuel machines are located, or whether it intended to include in that exemption any and all bets finding their way into the pari-mutuel machines even though they are initiated outside of the enclosure of the race track where the mutuel machines are located.

There is no clear-cut expression of intention by the Legislature as to this subject in the statute itself other than the first two sentences of section 6 of chapter 254 of the Laws of 1940 which provide as follows: " Any corporation or association licensed to conduct pari-mutuel betting at a horse race meeting shall provide a place or places within the race meeting grounds or enclosure at which such licensee shall conduct the pari-mutuel system of betting by its *patrons* on the results of the horse races at such meeting. Such place or places shall be provided with necessary equipment for issuing or vending pari-mutuel tickets, and adding machine equipment and a device capable of accurate and speedy determination of the amount of money in each pool and on each horse and the amount of award or dividend to *winning patrons* and displaying the same to *its patrons "*. (Italics ours.) From these provisions it seems clear that it was the intention of the Legislature that pari-mutuel betting be exempt from the provisions of section 986 of the Penal Law *only when done by patrons of the track physically present thereat, and that as a natural corollary the forwarding of bets to the pari-mutuel machines from outside the track by those who are not patrons thereof does not come within the exemption and is illegal and in violation of section 986 of the Penal Law.*

That is the construction that was placed upon that statute in the case of *Matter of Stewart* v. *Department of State* (174 Misc.

902, affd. 260 App. Div. 979, motion for leave to appeal denied 261 App. Div. 851). In that case a proceeding under article 78 of the Civil Practice Act was instituted to compel the Secretary of State to accept for filing a certificate of incorporation for a corporation which proposed, for the payment of a commission therefor, to accept bets from persons not in actual attendance at the race track and to forward such bets for placing in the pari-mutuel machines at the track. In dismissing the petition the court reached the conclusion that the purposes of the proposed corporation were not lawful, saying (p. 904):

" The statute provides that such pari-mutuel betting on horse races shall be lawful ' if conducted in the manner &ast; &ast; &ast; provided by this act, notwithstanding the provisions of any other law &ast; &ast; &ast; prohibiting or restricting lotteries, pool selling or book-making, or any other kind of gambling.' (Laws of 1940, chap. 254, § 2.) It is further provided in that section that betting ' shall only be conducted within the grounds or enclosure of a race track ' where and when pari-mutuel betting is authorized.

" *This language seems to provide an exclusive lawful means of making a pari-mutuel bet. It is permitted ' only ' if ' conducted ' at the race track.* To this extent is the statute repugnant to and supersedes the general statutory scheme prohibiting lotteries, bookmaking and other forms of gambling. Except in the field thus explicitly occupied by the Legislature, the general statutory prohibition obtains. *When pari-mutuel betting departs from the manner prescribed by the act of 1940 it becomes as unlawful as any other form of gambling. The statute is fairly susceptible of no other construction.*" (Italics ours.)

Despite this seemingly clear-cut decision on the proposition here presented — that the placing of a bet outside of a track enclosure for the purpose of having it forwarded and placed in the pari-mutuel machines at the track is not exempt under section 2 of chapter 254 of the Laws of 1940 from the operation of section 986 of the Penal Law — the matter is not so simply resolved in view of the history of similar prior legislation and decisions construing it.

Until the 1940 amendment of the 1938 Constitution there never was any legalized pari-mutuel betting in New York State. There was, however, legalized betting with book-makers at race tracks which was authorized by chapter 233 of the Laws of 1934. At that time the New York State Constitution provided that no

book-making or any other kind of gambling shall be authorized or allowed within this State, and that the Legislature shall pass appropriate laws to prevent offenses against such provision. By the afore-mentioned laws of 1934, the Legislature provided that any person who, upon such race track, shall make, register or record bets and wagers upon the result of horse races taking place there, shall forfeit the money or property so wagered, which penalty was to be exclusive of all other penalties provided in section 986 of the Penal Law. So far as exempting book-making at the track from the penal statute is concerned, the aforesaid laws of 1934 are identical with the present statutes under consideration. That law was construed in *People* v. *Mumford* (171 Misc. 397) on a state of facts identical with that here presented. In that case the defendant picked up bets from various persons in the parking lot of the Jamaica race track, which was within the enclosure of the race track but not within the portion thereof that only those paying admission could enter, for the purpose of placing those bets with book-makers inside of the track. Upon a motion to dismiss the complaint on the ground that no violation of law had been shown in that " the defendant was conducting his activities within the confines of the race track," the court said (p. 399): " Among the various provisions of the New York Racing Law (Laws of 1926, chap. 440, as amd.) dealing with race meetings there is a distinction between what are the grounds and the race track. While it is true in this case that the parking space is included within the property or grounds of the Jamaica race track, yet the actual property used for the purpose of the racing is within the area to which the admission ticket is required and this only is the exact location which is exempted from provisions of section 986 of the Penal Law. Within the confines of the Jamaica race track space is allocated for book-makers and it is clear that this defendant was not operating within or anywhere near that space, and, therefore, his case falls within the provisions of section 986." Thus the court held that it was the intention of the Legislature to exempt from the Penal Law only such wagers on horse races which are instituted and made within that portion of the race track which may be reached upon paying the admission price. However, an exemption statute identical in effect with that construed in the *Mumford* case was held to evidence a completely different intention of the Legislature. (*People* v. *Wynn,* 58 Hun 609, opinion in 12 N. Y. S. 379, affd. on opinion below, 128 N. Y. 599.)

In this connection it is interesting to point out that from 1909 to 1934 all book-making, including that taking place at a race track, was a penal offense (L. 1909, ch. 40, § 296; L. 1926, ch. 440, § 12), and that prior thereto such book-making as was exempt from the penal statute by chapter 233 of the Laws of 1934 was also permitted to the same extent by chapter 479 of the Laws of 1887 and chapter 570 of the Laws of 1895.

Section 4 of chapter 479 of the Laws of 1887 provided as follows: " and the provisions of sections three hundred fifty-one and three hundred fifty-two of the Penal Code (present Penal Law, § 986) shall not apply to the grounds of such associations during the number of days in each year during which the said races are hereby authorized; * * * and all pool selling shall be *confined* to the tracks where the races take place ". (Italics ours.)

This provision is identical in purport with the provisions of chapter 233 of the Laws of 1934 which were construed in the *Mumford* case.

Thus, on the surface there would seem to be an irreconcilable difference of opinion between the *Mumford* and *Wynn* cases as to a seemingly identical situation. However, at the time of the decision in the *Wynn* case (December, 1890) there was no provision in the law against anyone who " *forwards* * * * in any manner any money, thing or consideration * * * for the purpose of being bet or wagered " such as is contained in its successor section now known as section 986 of the Penal Law. (Italics ours.)

The provision making it a crime to " forward " a bet or wager was only put into the penal section by chapter 572 of the Laws of 1895, in effect May 9, 1895.

The only question before the court in the *Wynn* case, therefore, was whether or not the acceptance of the money for forwarding to the track there to be bet was such " recording or registering of a wager as brought the defendant within the prohibition of the statute."

The court there merely held that accepting a wager outside of the track for transmission to the track and to be bet there with a book-maker was not a violation of the penal statute condemning book-making. In that case the defendant took $5 from a person upon an express agreement to send it to the race track and bet it there for a twenty-five cents commission.

Clearly, the court did not have before it the question of whether the *forwarding* of those moneys to the track constituted

a crime because there was at that time no statutory prohibition against such forwarding.

Thus analyzed, there is no repugnancy between the holding in the *Wynn* case and the determination in the *Mumford* case.

Aside from the difference in the statute by reason of the amendment above noted, it may well be argued that neither decision is determinative of the issue here, for the statute here under consideration is different from the two afore-mentioned statutes, in that, as heretofore pointed out, section 6 of chapter 254 of the Laws of 1940 provides that a racing association " shall provide a place or places within the race meeting grounds or enclosure at which such [association] shall conduct the pari-mutuel system of betting by its patrons ".

This latter provision for a " *system of betting by its patrons* " is a clear indication of the intention of the Legislature that the exemption from the penal statute shall apply only when the betting is done by *patrons* of a race track. In that respect, the present statute goes further than the Laws of 1887 and the Laws of 1934 for both of those laws simply excluded from the operation of the Penal Law betting at a race track *and did not limit such betting only to patrons of the race track.*

The *present* statute was construed as spelling out an intention on the part of the Legislature to exempt betting from the penal statutes only if " conducted " within such enclosure by patrons there present in *Matter of Stewart* v. *Department of State* (*supra*). Said the court (p. 905) : " The regular acceptance of money to be wagered; the transmission of such money to the place of betting; the placing of the bet and the collection of the proceeds all seem to fall within the usual definition of the ' conduct ' of a bet. Certainly when this mode of betting is adopted, it is difficult to segregate these successive acts, and to eliminate some of them as not being parts of the ' conduct ' of the bet. It would seem to follow that those parts of the transaction outside of the race track are unlawful under the act of 1940 itself, since it permits only betting conducted ' within the grounds or enclosure of ' a race track where pari-mutuel betting is authorized."

It is the People's contention that under the state of facts here presented the defendant does not come within the exemption of section 2 of chapter 254 of the Laws of 1940, particularly in view of the holding in the *Stewart* case, and that accepting a bet outside of the enclosure of a race track which can only be reached by the payment of an admission price, even for the

purpose of placing that bet in the pari-mutuel machines, is a violation of section 986 of the Penal Law.

If it be held that the distinction here made between the determination in the *Wynn* case and the finding of the courts in the *Mumford* and *Stewart* cases (*supra*) is not well founded, certain it is that the differences of opinions thus enunciated create a reasonable doubt as to the applicable law. In such a situation a determination here following the *Wynn* case and thus resulting in an acquittal of the defendant, would leave the People powerless to review this court's determination for, in spite of the omission in the law in *People* v. *Reed* (276 N. Y. 5) the Legislature has not given the People the right to appeal from a determination adverse to them on questions of law. Under such circumstances, and cognizant of the paralyzing effect an acquittal of the defendant in this case would have upon the enforcement of the criminal statutes involving book-making, and mindful of the admonition of the Court of Appeals in the *Reed* case (*supra,* p. 9) that: '' While the defendant under our criminal procedure is entitled to the benefit of every reasonable doubt on the facts, the People should be entitled to any reasonable doubt a trial judge may have upon the law for, if he makes a mistake on the law, the People have no opportunity or method of reviewing his ruling, as strange as it may seem to us in this enlightened day. The defendant, for a wrong ruling, may always appeal the case for review to a higher court; the People have no such privilege, except as hereinafter stated. The trial justices in criminal cases, therefore, should bear this in mind when ruling upon points of law '', this court is constrained to rule against the defendant on that issue.

The defendant does not raise the proposition that under the information in this case he was charged with a violation of section 986 of the Penal Law of the State of New York, in that he '' unlawfully engaged in bookmaking and received sums of money from divers persons as bets upon the results of horse races to be run, and registered and recorded bets on the results of horse races to be run '' and that, therefore, he may not be found guilty under that section of *forwarding* the moneys in question. The court however is aware of the decision in *People* v. *Gargano* (267 App. Div. 776) in which by a closely divided court the judgment of conviction of the defendant was reversed and the information was dismissed, the court saying: '' The information charges that he unlawfully engaged in book-making; that he received sums of money from divers persons as the bets

apon the results of horse races to be run, and recorded and registered bets on the results of horse races to be run. Although defendant might have been found guilty of the crime of forwarding a wager (*People* v. *McGuire*, 275 N. Y. 521) there is no evidence to sustain the conviction of the crimes with which he was charged.''

The court has examined the record in the *Gargano* case (*supra*) and believes that the determination there made should be expressly limited to the facts there found to exist. In that case the defendant did not take the stand or introduce any evidence. The People in their *direct* case proved a case of forwarding and not an outright case of book-making. In this case the evidence of forwarding first came from the mouth of the defendant. It was he who introduced that evidence as a defense. Under the circumstances, the facts being before the court at the instance and insistence of the defendant, he should not be heard to complain that the information does not in so many words charge him with the penal offense of forwarding, which, in itself, is an integral part of section 986 of the Penal Law, the violation of which is set forth in the information proper.

At the end of the People's case and at the end of the whole case, no motion was made to dismiss on that ground, nor is that ground set forth in the memorandum of the defendant. In the interests of justice and under the facts of this case, the information may be deemed amended to conform to the proof.

The defendant is found guilty and is directed to appear before this court for sentence on the 18th day of December, 1952.