439 P.2d 922

**Robert L. SCHNOOR and Robert McNeece, Plaintiffs-Appellees,**

v.

**Gilbert GRIFFIN, Defendant-Appellant.
No. 8474.**

Supreme Court of New Mexico.

April 22, 1968.

Shipley, Seller & Whorton, Alamogordo, for appellant.

Albert J. Rivera, John P. Otto, Alamogordo, for appellees.

OPINION

CARMODY, Justice.

By statute, pari-mutuel betting is authorized under certain conditions. The

problem in this case is whether a person, at a place away from the enclosure, can lawfully place a bet through an agent and recover from the agent the amount of the winnings received upon a winning ticket. This appeal is from the trial court's determination that the agent was responsible by reason of breach of contract.

Ruidoso Downs, New Mexico, is a race track where pari-mutuel wagering is licensed. The plaintiffs, at Alamogordo, gave to the defendant $6.00 to take to Ruidoso Downs to bet on what is called the "Big Q." This is a combination bet on which horses finish first and second in the eighth and ninth races, respectively. The defendant was instructed how to place the bet, and it was agreed that he would receive ten per cent of any winnings if the bet was successful. The defendant placed the bet and won, the winning tickets paying $4,138.60. The defendant, by having his nephew cash the winning ticket, appropriated the money to himself and refused to turn it over to the plaintiffs.

The trial court found the above facts, and, in addition, made finding No. 10, that the parties, on frequent occasions in the past, had taken bets of other persons to wager at Ruidoso Downs, with the understanding that the person carrying the bet would receive ten per cent of the winnings. The court concluded that the defendant had converted the entire sum less ten per cent, and that there was a valid contract between the parties, which had been breached by the defendant. Judgment was entered in favor of the plaintiffs for $3,724.74 together with interest.

The defendant quarrels with the conclusions and judgment of the trial court, saying that the findings, which they do not attack, established that the contract was illegal and against public policy; that the parties were in pari delicto, the contract of agency being a wagering contract under the common law.

There is no question but that if this was a wagering contract, it is void. Appleton v. Maxwell, 1901, 10 N.M. 748, 65 P. 158. Cf., State v. Schwartz, 1962, 70 N.M. 436, 374 P.2d 418; and compare, Garvin v. Hudson, 1966, 76 N.M. 403, 415 P.2d 369.

The New Mexico statute, with reference to pari-mutuel betting, is as follows (§ 60-6-6, N.M.S.A.1953, 1967 Pocket Supp.):

"60–6–6. Pari mutuel method legalized—Maximum commissions—Gambling statutes not repealed.—A. Within the enclosure where any horse races are held and where the licensee has been licensed to use the pari mutuel method or system of wagering on such races, the same shall be lawful but only within the enclosure where such races are held.

"B. The sale to patrons present on the grounds of pari mutuel tickets or certificates on said races or the use of the pari mutuel system shall not be construed to be either betting, gambling, or pool selling, and is authorized under the conditions provided by law.

"* * * * * *

"D. Existing statutes of this state against horse racing on Sundays, on bookmaking, pool selling, or other methods of wagering on the racing of horses, are not repealed, but are hereby expressly continued in effect, with the exception that the operation of the pari mutuel method or system in connection with the racing of horses, when used as provided by law, is lawful."

The statute relating to gambling (§ 40A–19–1, N.M.S.A.1953, 1967 Pocket Supp.), insofar as here pertinent, is as follows:

"40A–19–1. Definitions relating to gambling.—As used in Article 19 of the Criminal Code:

"A. 'Bet' means a bargain in which the parties agree that, dependent upon chance, even though accompanied by some skill, one stands to win or lose anything of value specified in the agreement. A bet does not include:

"* * * * * *

"(4) betting otherwise permitted by law;

"*  *  *  *  *  *

"C. 'Gambling device' means a contrivance which, for a consideration, affords the player an opportunity to obtain anything of value, the award of which is determined by chance, even though accompanied by some skill and whether or not the prize is automatically paid by the device; and

"D. 'Gambling place' means any building or tent, any vehicle, whether self-propelled or not, or any room within any of them, one of whose principal uses is:

"(1) making and settling of bets;

"(2) receiving, holding, recording or forwarding bets or offers to bet;

"*  *  *  *  *  *"

Sec. 40A–19–2, N.M.S.A.1953, provides that "Gambling consists of: A. making a bet; * * *."

We also make reference to § 40A–19–3, N.M.S.A.1953, which, insofar as material, is as follows:

"40A–19–3. Commercial gambling.— Commercial gambling consists of either:

"*  *  *  *  *  *

"B. receiving, recording or forwarding bets or offers to bet;

"C. possessing facilities with the intent to receive, record or forward bets or offers to bet;

"D. for gain, becoming a custodian of anything of value, bet or offered to be bet;

"*  *  *  *  *  *"

The question is whether the legislature intended to exempt from the operation of the gambling laws only such pari-mutuel bets as are made by patrons of a racing track where pari-mutuel machines are located, or whether it intended to include in the exemption any and all bets made through the pari-mutuel machines even though initiated outside of the enclosure where the betting machines are located.

The language used by the legislature was not without reason. Certain portions of § 60–6–6, supra, make evident the legislative intent. This is particularly obvious where, in paragraph A, it is stated, "Within the enclosure" and "but only within the enclosure where such races are held"; in paragraph B, "The sale to patrons present on the grounds * * * shall not be construed to be * * * betting, * * * and is authorized *under the conditions provided by law*" (emphasis added); and in paragraph D, "Existing statutes * * * against horse racing * * * are not repealed, but are * * * expressly continued in effect, with the exception that the operation of the pari mutuel method, * * * when used as provided by law, is lawful." It would seem apparent that it was the intention of the legislature to exempt pari-mutuel betting from the general provisions of the gambling laws *only when done by patrons who are physically present at the track.* It follows from the above that one who is not personally present at the track is not a patron thereof and does not come within the pari-mutuel exemption.

Although the plaintiffs' position that defendant was merely an agent and that there was no illegal act because there was no bet until the wager was made at the pari-mutuel window—which by itself was lawful—has considerable appeal, we are compelled to disagree. On analysis, it is obvious the entire transaction was a mere subterfuge to accomplish a purpose outside the contemplation of the law. The giving of money to defendant and his transporting it to the place of betting are inseparable from the act of placing the bet itself. To sanction such a procedure would permit a mode of gambling not allowed by the pari-mutuel statute. Plaintiffs were neither "patrons" nor "within the enclosure."

We have not been cited to, nor have we found (with one possible exception), any cases which have determined that the type of transaction here involved is other than illegal. New York has often had occasion to rule on this type of problem, and in Stewart v. Department of State, 1940, 174 Misc. 902, 22 N.Y.S.2d 164, aff'd 260 App.

Div. 979, 23 N.Y.S.2d 226, leave to appeal denied 261 App.Div. 851, 25 N.Y.S.2d 1011, the court said:

"The statute provides that such pari-mutuel betting on horse races shall be lawful 'if conducted in the manner * * provided by this act, notwithstanding the provisions of any other law * * * prohibiting or restricting lotteries, pool selling or bookmaking, or any other kind ·of gambling.' * * * Laws of 1940, ·chap. 254, § 2 [McK.Unconsol.Laws, § 7562]. It is further provided in that ·section that betting 'shall only be con-·ducted within the grounds or enclosure of ·a race track' where and when pari-mutuel betting is authorized.

"This language seems to provide an ·exclusive lawful means of making a pari-mutuel bet. It is permitted 'only' if ·'conducted' at the race track. To this ·extent is the statute repugnant to and supersedes the general statutory scheme prohibiting lotteries, bookmaking and ·other forms of gambling. Except in the field thus explicitly occupied by the leg-islatuse, the general statutory prohibition ·obtains. When pari-mutuel betting de-parts from the manner prescribed by the ·act of 1940 it becomes as unlawful as ·any other form of gambling. The statute is fairly susceptible of no other construc-tion."

The court, in Stewart, also made the fol-lowing statement, which is peculiarly ap-plicable to the case before us:

" * * * The regular acceptance of money to be wagered; the transmission ·of such money to the place of betting; the placing of the bet and the collection of the proceeds all seem to fall within the usual definition of the 'conduct' of a bet.

"Certainly, when this mode of betting is adopted, it is difficult to segregate these successive acts, and to eliminate some of them as not being parts of the 'conduct' of the bet. It would seem to follow that those parts of the transaction ·outside of the race track are unlawful

under the act of 1940 itself, since it per-mits only betting conducted 'within the grounds or enclosure of' a race track where pari-mutuel betting is authorized." See, also, People v. Hebert, 1952, 203 Misc. 173, 117 N.Y.S.2d 415. Compare, Holberg v. Westchester Racing Associa-tion, 1945, 184 Misc. 581, 53 N.Y.S.2d 490.

We have not overlooked the recent New York case of Cohen v. Iuzzini, 1966, 25 A.D.2d 878, 270 N.Y.S.2d 278. This was a memorandum decision and makes reference to "current public policy of this State." The court, in Cohen, apparently ruled as a matter of law that an agent could collect the proceeds of a winning ticket and be responsible to his principal. Although the opinion is not completely clear as to the facts, we assume from the dissent that the case involved "off-track" betting. This case appears to be the only decision approv-ing of this practice, and, as we view it, is less than persuasive. We would also ob-serve that the case was either not appealed to the New York Court of Appeals, or, if appealed, no decision has as yet been ren-dered.

California also allows pari-mutuel betting. Until 1953, that state, by statute, author-ized wagering by an agent on behalf of a principal who was not within the enclosure. Even so, in People v. Tompkins, 1952, 109 Cal.App.2d 215, 240 P.2d 356, a convic-tion for violation of the gambling statutes was affirmed on the facts, the court stating that to allow the defense of the statute would be to permit commercial gambling away from the race track to flourish; that to sustain such a contention "would be to ascribe to the legislature an intent to elimi-nate most of the protective regulations de-signed to prohibit widespread commercial gambling on horse races."

It is also of considerable interest that the statute referred to in Tompkins was re-pealed by the California legislature the following year (in 1953). Thereafter, in 1959, there having been no statute on the subject in the intervening six years, the legislature passed a new section to take

the place of the statute which had been repealed in 1953, one sentence of which reads, "Also illegal is any wagering or betting on horse races outside an inclosure where the conduct of horse racing is licensed by the board." Cal.Bus. & Prof.Code § 19595 (West 1964).

Two very old cases from Tennessee, Ransome v. State, 1892, 91 Tenn. 716, 20 S.W. 310; and Debardelaben v. State, 1897, 99 Tenn. 649, 42 S.W. 684, also held that an off-track bet placed by an agent is illegal because the bet must be made within the enclosure where the race takes place.

Plaintiffs seek to distinguish the California Tompkins case, supra, because it involved commercial gambling. Perhaps such a distinction is well-founded in the sense that the case is not "on all fours" with the case before us; but, nevertheless, the language used by the court is very persuasive, particularly when it is realized that the California agency statute then existed. It would not be amiss in this connection to take cognizance of the trial court's finding No. 10 referred to above, and query, if the taking of one bet to a race track for a friend is permissible, then is the taking of more than one commercial gambling? Without saying that the action of the parties here constituted commercial gambling, in any event it is not far removed.

Plaintiffs also argue that the Tennessee cases, supra, have been overruled by Cuffman v. Blunkall, 1938, 22 Tenn.App. 513, 124 S.W.2d 289. We disagree. Reliance on this case, as well as Leake v. Isaacs, 1936, 262 Ky. 640, 90 S.W.2d 1001; and Matta v. Katsoulas, 1927, 192 Wis. 212, 212 N.W. 261, 50 A.L.R. 291, is to no avail. The three cases all involved the liability of an agent who obtained a prize by presenting the winning ticket when acting as representative of the owner of the ticket who had personally purchased the same. The distinction is obvious—in our case, the defendant was a participant from the very inception of the transaction (see Stewart v. Department of State, supra) and not merely one acting in a representative capacity to collect a bet legally made.

■ The plaintiffs also reason that § 22–10–11, N.M.S.A.1953, requires the judgment be affirmed. This section of the statute makes a stakeholder liable for money placed in his hands "staked upon any betting." We find this contention without merit. The defendant was not a stakeholder—he was a party to the illegal act—particeps criminis in an illegal transaction, and the law will leave the parties where it found them. Appleton v. Maxwell, supra; Strum v. Truby, 1935, 245 App.Div. 357, 282 N.Y.S. 433; compare, Restatement, Second, Agency § 412(2) (b) (ii), comments *a* and *e*.

The applicability of this section of our statute was really disposed of in State v. Schwartz, supra, where we referred to the entire original act of which the above section was a part, and said:

"This statute was designed to discourage gambling by depriving the person winning any of the things therein enumerated of any title thereto, * * *."

Note must be taken that plaintiffs claim that this court has decided a case which is dispositive of the issue herein presented. We agree, but not in the manner urged by plaintiffs. Citation is made to State v. Capital Bank, 1927, 32 N.M. 369, 257 P. 993, 53 A.L.R. 1356, which cited and quoted from McMullen v. Hoffman, 1899, 174 U.S. 639, 19 S.Ct. 839, 43 L.Ed. 1117. The quotation from McMullen appears at page 379 of 32 N.M., on page 996 of 257 P. and is as follows:

"No court will lend its assistance in any way towards carrying out the terms of an illegal contract. In case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce any alleged rights springing from such contract."

■ Actually, the Capital Bank case is dispositive of this appeal, in view of our determination that the pari-mutuel statute

does not authorize off-track betting. The syllabus by the court is, "(1) An action cannot be maintained on a contract that is illegal or against public policy, where both parties are equally culpable." Such is the situation here.

At the close of the trial of this case, the defendant moved to amend his answer to assert the affirmative defense of illegality, so that the pleadings would conform to the evidence before the court. The transcript brought up upon appeal contains only the pleadings, and therefore we do not have the benefit of the evidence submitted, nor the trial court's reasons for refusing the proposed amendment. However, the trial court, in its conclusion No. 3, determined that there was a "valid contract," thus making it apparent that the validity of the contract was ruled upon. In any event, we are of the opinion that the contract was void as contrary to public policy; refusal to allow the amendment is of no consequence. Skeet v. Wilson, 1966, 76 N.M. 697, 417 P.2d 889, is not to the contrary. Further, rule 15(b) (§ 21-1-1(15) (b), N. M.S.A.1953) provides that amendments shall be liberally allowed. See, Kleeman v. Fogerson, 1964, 74 N.M. 688, 397 P.2d 716; and Maine v. Garvin, 1966, 76 N.M. 546, 417 P.2d 40.

We also take note of § 22-10-7, N.M.S.A. 1953, which is a part of the same chapter referred to in State v. Schwartz, supra, allowing the defense urged to be presented in evidence "under the general issue."

Permitting the defendant to escape liability and retain the fruits of this transaction is not entirely to our liking; nevertheless, where two parties to a transaction are particeps criminis, the law will render no aid to either and will leave the parties where it found them. Except in very limited circumstances, the public policy of this state is to restrain and discourage gambling. This policy must override the rule which prevents unjust enrichment, particularly where, as here, there is a choice between that which is considered to be for the benefit of the public at large as distinguished from any benefit to an individual litigant. Should the people of the State of New Mexico, through their elected representatives, decide to allow "off-track" betting, it should be done by statute specifically declaring the change in public policy, and not by court decision.

The judgment will be reversed and the cause remanded to the district court of Otero County, with instructions to enter judgment for the appellant. Each of the parties will assume their own costs. It is so ordered.

MOISE and COMPTON, JJ., concur.